THE COUNTY OF COOK *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* GEORGE J. PRIESTER *et al.*, Defendants-Appellees and Cross-Appellants —(GEORGE J. PRIESTER *et al.*, Defendants-Counterplaintiffs and Cross-Appellants, *v.* THE COUNTY OF COOK *et al.*, Plaintiffs-Counterdefendants and Cross-Appellees).

(No. 58308;

First District (4th Division)—September 25, 1974.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner and John A. Dienner, III, Assistant State's Attorneys, of counsel), for appellants.

Charles J. O'Connor and Rosemarie J. Guadnolo, both of Arvey, Hodes, Costello & Burman, of Chicago, for appellees.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This action was instituted in the Circuit Court of Cook County against George J. Priester, Veta L. Priester, and the Waukee Realty Company, Inc., to enforce the provisions of a special use permit issued by the County. The County sought a permanent injunction and statutory penalties in the form of fines for alleged violations of certain zoning special use restrictions at Pal-Waukee Airport.

The Village of Wheeling was permitted to intervene on the plaintiff's behalf, but at the close of the plaintiff's case the trial judge dismissed it from the case based on his finding that it lacked standing and that it failed to show any damages to itself or its residents.

The court, sitting without a jury, found the restrictions to be void and held in favor of the defendants. The County instituted this appeal from that judgment, and the Village of Wheeling appeals from its dismissal. Subsequent to the plaintiff's filing of a notice of appeal, the trial court amended its decree. A supplementary notice of appeal was filed by

the County, and the defendants filed a cross-appeal from the unamended prior decree.

The issues on appeal are whether restrictions on the weight of aircraft is a proper exercise of a State's police power; whether the Village of Wheeling has authority to challenge the violations of the terms of a special use permit granted by Cook County; and whether a trial court has jurisdiction to amend its final decree after a notice of appeal has been filed.

The defendants and counter-plaintiffs, George J. Priester, Veta L. Priester and the Waukee Realty Company, Inc., are the owners of Pal-Waukee Airport, a private airport open to the public, located in an un-incorporated area of Cook County. The Village of Wheeling is located near, but not contiguous to the northern boundary of the airport.

Under the Cook County zoning ordinance enacted in 1940, the airport property was classified and developed as a permitted use. In 1960, the Cook County Board of Commissioners reclassified the property as M-I, a restricted manufacturing district, and the property was classified as an existing special use thereunder. In 1963, the Priesters applied to the Zoning Board of Appeals of Cook County for an extension of their existing special use in order to extend Runway 34/16. After conducting public hearings the Board made its recommendation to the Commissioners, a legislative body of Cook County vested with the authority to amend zoning ordinances and to grant special uses by ordinance.

On March 16, 1964, the Commissioners enacted an ordinance granting the Priesters a special use permit to lengthen Runway 34/16 subject to three conditions: (1) Runway 34/16 was not to be extended beyond a total length of 5000 feet from the starting point of the existing runway near Hintz Road. (2) Runway 34/16 was to be constructed for a load-bearing capacity under regular service not to exceed 60,000 pounds. (3) The landing and take-off visual flight patterns for the extended runway should lie to the east of the Village of Wheeling.

In 1970 Cook County brought an action against the Priesters alleging violations of conditions 1 and 2 and sought injunctive relief and criminal fines. The Village of Wheeling filed a petition to intervene under section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, § 26.1) and also filed a complaint seeking injunctive relief alleging violation of all three of the conditions. In addition to their answer the Priesters filed a counterclaim seeking to have the three conditions declared unconstitutional on various grounds and to enjoin their enforcement. At the close of the evidence presented by the County and the Village, the court dismissed the criminal counts of the County's complaint because the County had failed to prove the allegations beyond a reasonable doubt, and dis-

missed the complaint of the Village with prejudice on the ground that the Village was without standing and had failed to present any evidence showing harm to itself or to its residents. It also ruled that a permanent injunction issued against the County of Cook restraining it from enforcing the ordinance.

Pal-Waukee is classified as a "secondary airport" which includes such airports as Milwaukee, Detroit and Minneapolis, and is also classified as a reliever airport to O'Hare under the National Airport Plan. Airports included in the National Airport Plan are deemed by the Department of Transportation to be related to the national interest.

The airport ranks 51st in the nation in terms of general aviation and 95th in total operations out of the approximately 5000 airports in the United States. It has a total of between 170,000 and 220,000 flight operations per year, and has 75,000 itinerant flight operations. Itinerant flights are those which originate and terminate at different points and generally involve flights of substantial distance. Because of the heavy air traffic in the Chicago area, safety factors compel the Federal Aviation Administration to operate a tower at Pal-Waukee. It is only one of three privately owned airports in the country at which the FAA provides control tower service. The control tower is open from 6 A.M. until midnight, and during that time controls all ground movement, flight patterns, take-offs and landings of aircraft using the airport. When the tower is closed, aircraft using the airport are under the direction and control of the tower at O'Hare International Airport.

There are 350 to 400 aircraft based at Pal-Waukee, most of which are general aviation aircraft used for business purposes and owned by corporations. Four of these are jet aircraft weighing in excess of 60,000 pounds.

Charter flights land there on occasion, but there are no public airlines serving Pal-Waukee directly. The airport is also the headquarters of the Civil Air Patrol.

Runway 34/16 is one of the longest runways in the Chicago area with the exception of O'Hare. The longest runway at Midway Airport is 5678 feet long, Meigs Field has a maximum runway of 3345 feet, and DuPage County Airport has a runway of 4000 feet.

The airport is equipped with blast fences at the ends of Runway 34/16 to disperse aircraft exhaust as a protection for the nearby automobile traffic, and there are cement aircraft turn-around areas at each end of the runway that also serve as blast pads to eliminate the blowing of dust and debris. The airport is also equipped with Vasi lights, visual strobe-light indicators, used to guide approaching aircraft, and the runways are equipped with high-intensity landing lights.

Prior to the extension of Runway 34/16 the largest aircraft using the airport was a DC-3, which weighed approximately 60,000 pounds when fully loaded with fuel and passengers or freight and no jets were in use.

The evidence at trial showed the runway was constructed with a load-bearing capacity of 60,000 to 75,000 pounds, and one aircraft, a BAC-111, has used the runway while weighing 79,000 pounds.

The County appeals from the judgment of the circuit court only with respect to the alleged violation of the 60,000-pound weight limitation. It states a zoning ordinance is presumptively valid, and one who challenges it must prove by clear and convincing evidence that it is arbitrary and unreasonable. It contends there was no evidence presented to rebut the presumption that the 60,000 pound limitation was a safety factor to the surrounding landowners, users, and passengers of users of the airport.

The County argues that even though the FAA is the dominant authority in control of the national airspace, it does not exercise exclusive control over all aspects of aviation and airport regulation, and has never attempted to control the weight of an aircraft. The County maintains it has a legitimate interest and duty to protect the citizens living in the area surrounding the airport and is free to regulate activities within its boundaries which directly affect the public health, welfare and safety of its citizens.

It denies that navigable airspace is involved and denies the weight limitation is in contravention of the general Federal policy which speaks of developing safety within the air industry (49 U.S.C. 1303 (a) and (c)). The policy of the State of Illinois is to encourage air travel development "with the least possible restriction, consistent with their safety and with the safety and the rights of others." Ill. Rev. Stat. 1971, ch. 15½, § 22.25.

■■ The County argues with regard to public safety, but does not state how the safety of the public is impaired by the operations of Pal-Waukee Airport. It suggests that heavier aircraft are more of a hazard to the community than lighter planes, yet the heavier, high-performing aircraft are equipped with the latest navigational and guidance systems and are flown by pilots with more experience than the lighter, lesser equipped planes. This court takes note that Midway Airport in Cook County, as well as many other busy airports throughout the country, are located in areas more densely populated than that surrounding Pal-Waukee.

■■ We find the restrictions are in contravention of the stated policies of both the Illinois Aeronautics Act (Ill. Rev. Stat. 1971, ch. 15½, § 22.25)

and the National Airport Plan (49 U.S.C. § 1301 *et seq.*). The purpose of the Illinois Aeronautics Act is to "further the public interest and aeronautical progress * * * by cooperating in effecting a uniformity of laws relating to * * * aeronautics in the several states * * *." The National Airport Plan envisions a full utilization of the nation's airports.

The 60,000 pound weight restriction would neither promote uniformity of laws nor would it promote full utilization of its facilities. The inflexible standard would also discourage aviation technology from improving the capability of aircraft.

■■ The effect of the ordinance is to manipulate the type and number of aircraft which Pal-Waukee may service in that it regulates air traffic beyond the boundaries of the county, under the guise of land use control. As a reliever airport to O'Hare under the National Airport Plan, and as an airport with substantial itinerant flight volume, its impact on aviation and interstate commerce is substantial, and is properly a subject of Federal regulation. If a number of airports were subject to the same type of limitations, the results would be chaotic.

Section 1508 of the Federal Aviation Act (49 U.S.C. § 1508) provides in part: "The United States of America is declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States * * *." By sections 1348 (a) and (c) the Administrator of the FAA has been given broad authority to regulate the use of the navigable airspace, "in order to insure the safety of aircraft and the efficient utilization of such airspace * * *."

In the case of *Northwest Airlines, Inc. v. Minnesota* (1944), 322 U.S. 292, 303, Mr. Justice Jackson's concurring opinion stated:

> "Federal control is intensive and exclusive. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands. The moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls."

In the case of *City of Burbank v. Lockheed Air Terminal, Inc.* (1973), 411 U.S. 624, the owner and operator of an airport brought suit against the city seeking a judgment declaring the invalidity of a city ordinance prohibiting jet aircraft from taking off between the hours of 11 P.M. and 7 A.M. the following morning. The circuit judge held that the pervasiveness of federal regulation in the field of air commerce, the intensity of the national interest in that regulation and the nature of air commerce itself compelled the conclusion that state and local regulation in that

area had been pre-empted. The Supreme Court affirmed, based on the pervasiveness of the Federal Aviation Act (49 U.S.C. § 1301 *et seq.*) The Court quoted the district court as follows:

"The imposition of curfew ordinances on a nationwide basis would result in a bunching of flights in those hours immediately preceding the curfew. This bunching of flights during these hours would have the twofold effect of increasing an already serious congestion problem  *  *  *  by increasing flights in the period of greatest annoyance to surrounding communities. Such a result is totally inconsistent with the objectives of the federal statutory and regulatory scheme." 411 U.S. at 627-628.

It also found "[t]he imposition of curfew ordinances on a nationwide basis would cause a serious loss of efficiency in the use of navigable airspace."

The county nevertheless maintains that a local authority may make regulations which have the effect of curtailing activities not forbidden by federal regulation, citing the case of *Aircraft Owners & Pilots Association v. Port Authority*, 305 F.Supp. 93 (E.D.N.Y. 1969). That case is not applicable because there the power sustained by the court was not the result of the operation of police powers, but of a proprietary power vested in the Port Authority. This distinction was recognized in both the opinion of the Justices (1971), 271 N.E.2d 354, and in *City of Burbank v. Lockheed Air Terminal, Inc.* (1973), 411 U.S. 624, *aff'g* 457 F.2d 667.

■■ We hold that the level of Federal regulation of air commerce by the Federal Aviation Agency is so pervasive as to deprive other governmental bodies of the power to act, and that the weight limitation ordinance violates the supremacy clause of article VI of the Constitution of the United States.

■■ We also find the County had no authority to regulate the weight of the aircraft under the color of its power to regulate land use because a State's police power does not extend to the regulation of a business. The details of operating a business are not reasonably related to the public health, safety, or welfare as required by *Village of Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365; and *Schultz v. Village of Lisle* (1972), 53 Ill.2d 39.

In the case of *Naper Aero Club v. County of DuPage* (1964), 30 Ill. 2d 447, the county permitted a parcel of land to be used as an airstrip, but attached the condition limiting the use of the airstrip to landowners in a certain subdivision. The Illinois Supreme Court held that residence requirements bore no relationship to the use of the land and was therefore not a proper zoning consideration.

We also agree with the case of *Schlosser v. Michaelis* (1963), 18 App. Div. 940, 238 N.Y.S. 2d 433, where a wholesale florist was allowed to operate his business subject to limitations upon the number of employees, hours of operation, and upon the weight capacity of trucks stored outside the building. The court stated:

> "In our opinion, the Board of Zoning Appeals here had no power to impose the aforementioned conditions. Such conditions applied to the details of the operation of the business and not to the zoning use of the premises." 18 App. Div. 2d at 941, 238 N.Y.S. 2d at 434-435.

Also, see *De Ville Homes, Inc. v. Michaelis* (1960), 201 N.Y.S.2d 129.

In this case the size of the aircraft using the airport relates to the operation of the business as distinguished from the regulation of the land use itself.

The Village of Wheeling was permitted by the court to intervene pursuant to section 26.1 of the Civil Practice Act. (Ill. Rev. Stat. 1971, ch. 110, § 26.1.) The Village relied on section 3160 of the Counties Act (Ill. Rev. Stat. 1971, ch. 34, § 3160), which provides that anyone whose property is affected by the use of land in violation of section 3151 *et seq.* of the Counties Act may institute any appropriate action in equity to prevent such unlawful use or to prevent any illegal act, conduct, business or use in or about such premises.

In dismissing the Village the court determined the Village had failed to show any harm to itself or its residents and that it lacked standing to challenge the acts of the defendants citing the following cases: *Village of Bensenville v. County of DuPage* (1961), 30 Ill.App.2d 324; *Village of Mount Prospect v. County of Cook,* (1969), 113 Ill.App.2d 336; *Krembs v. County of Cook* (1970), 121 Ill.App.2d 148.

The Village seeks to distinguish those cases based on the fact that in those cases the Villages were attacking County zoning, and in this case the Village is seeking to uphold the County zoning. The Village also states that in none of those cases is section 3160 of the Counties Act discussed.

■■ After reviewing those cases it is apparent they stand for the proposition that a Village is without standing to litigate with respect to county zoning without reference to whether the Village seeks to attack or uphold.

Section 3160 of the Counties Act is not helpful to the Village because it provides that "any person the value or use of whose property is or may be affected by such violation, in addition to other remedies, may institute any appropriate action or proceedings in equity." In this case the Village was not dismissed until the close of the plaintiff's case and had

the opportunity to show harm to itself or its residents, but did not do so. ■■ Under section 3160 of the Counties Act, the property owner must prove injury, and the mere showing of an alleged technical violation is not sufficient. (*222 East Chestnut Street Corp. v. La Salle National Bank* (1957), 15 Ill.App.2d 460.) We hold the order dismissing the Village of Wheeling was correct and is hereby affirmed.

Finally, the County contends the trial court was without jurisdiction to modfy its final decree. On July 13, 1972, the trial court entered its original decree which declared the 60,000-pound weight limitation unconstitutional and imposed an 80,000-pound limitations. The 80,000-pound limitation was entered in an attempt to settle the litigation between the parties, and the trial court stated its hope that it would accommodate both parties.

The County filed its notice of appeal on July 27, 1972, and on August 1, 1972, the Priesters filed a motion to modify the decree on the basis that the 80,000-pound limitation was also invalid as an interference in an area which had been federally pre-empted.

On August 10, 1972, the Priesters filed a notice of cross-appeal from the portion of the decree entered on July 13, 1972, which provided for the 80,000-pound limitation.

On August 15, 1972, the trial court issued a modfied decree which eliminated the 80,000-pound limitation on the use of the runway.

The County contends the court was without jurisdiction to modfy the decree because the filing of its notice of appeal from the original decree divested the jurisdiction of the trial court, and cites language of Illinois Supreme Court Rule 301 (Ill. Rev. Stat. 1971, ch. 110A, § 301), which states that "the appeal is initiated by filing a notice of appeal. No other step is jurisdictional."

The position of the defendants is that Supreme Court Rule 301 provides that every final judgment of the circuit court is appealable and that the appeal is initiated by filing a notice of appeal, but under section 68.3 the finality of the judgment is extended. Section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, § 68.3) provides:

"(1) In all cases tried without a jury, any part may, within 30 days after the entry of the decree or judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the decree or judgment or to vacate the decree or judgment or for other relief. Neither the filing of nor the failure to file a motion under this section limits the scope of review.

(2) A motion filed in apt time stays execution, and the time for

appeal from the decree of judgment does not begin to run until the court rules upon the motion."

■■ We find no merit in defendants' contention that the above-mentioned section 68.3 extends the jurisdiction of the trial court after a notice of appeal is filed. In *City of Chicago v. Myers* (1967), 37 Ill.2d 470, at page 472, the court said:

"The jurisdiction of the appellate court attaches upon the proper filing of a notice of appeal. Thereafter, excepting certain instances not here concerned, the cause is beyond the jurisdiction of the trial court. This court in *Brehm v. Piotrowski*, 409 Ill. 87, 90, declared: 'Filing of a notice of appeal within due time causes jurisdiction of the reviewing court to attach instanter and deprives the lower court of jurisdiction. Also, this court does not possess the jurisdiction to review proceedings of the lower court which happened after the notice of appeal was filed and served. (*Wolcott v. Village of Lombard*, 387 Ill. 621.)' See also, *People ex rel. Doty v. Dusher*, 24 Ill.2d 309."

For these reasons the amended decree is invalid and is hereby reversed.

We further consider the original decree and it becomes obvious the ruling establishing the 80,000-pound limitation is just as erroneous as the 60,000-pound limitation. Therefore, that part of the decree is reversed and the decree is modified accordingly. In all other respects the decree is affirmed.

The original decree is affirmed as modified. The modified decree entered after the notice of appeal was filed is reversed, vacated and set aside as invalid. The order dismissing the Village of Wheeling is affirmed.

Original decree affirmed; modified decree reversed; and order dismissing the Village of Wheeling affirmed.

ADESKO, P. J., and JOHNSON, J., concur.