WILLIAM E. RUSSELL, Plaintiff-Appellant, *v.* REUBEN I. KLEIN *et al.,* Defendants-Appellees.

(No. 57558;

First District (5th Division)—October 24, 1975.

*Rehearing denied December 4, 1975.*

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

SULLIVAN, J., dissenting.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Moriarty, Rose & Hultquist, Ltd., of Chicago (Maurice James Moriarty and Robert C. Hultquist, of counsel), for appellant.

George B. Collins, of Collins & Amos, of Chicago, for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

The Illinois Supreme Court has remanded the instant case to us for further consideration. (58 Ill.2d 220, 317 N.E.2d 556.) Plaintiff originally appealed from an order finding that a judgment by confession which had been entered against defendants was satisfied and from a money judgment entered against him after he had filed his notice of appeal. Initially, we reversed both the order and the money judgment holding that defendants' petition for satisfaction of the judgment by confession was barred by the two-year statute of limitations in section 72 of the Civil Practice Act. (Ill. Rev. Stat. 1971, ch. 110, par. 72(3); 14 Ill.App.3d 856, 303 N.E.2d 241.) In reversing, we did not consider any issues other than the one relating to section 72. The Supreme Court reversed our determination regarding section 72 and remanded the case to us for consideration of the remaining issues on appeal. In the instant appeal plaintiff contends that: (1) the trial court's judgment was against the manifest weight of the evidence; (2) the Statute of Frauds precludes enforcement of the agreement in satisfaction of the judgment; and (3) the trial court erred when having lost jurisdiction by virtue of plaintiff filing his notice of appeal nevertheless entered judgment for defendant for $24,880.

In its opinion, the Supreme Court observed that the facts of the instant case were adequately summarized in our prior opinion. (58 Ill.2d 220, 317 N.E.2d 556.) Having again examined the record, we believe our prior summary of the facts will amply serve our present needs and therefore refer the reader to that summary of the evidence. 14 Ill.App.3d 856, 303 N.E.2d 241.

OPINION

Plaintiff first contends that the trial court's judgment was against the manifest weight of the evidence. He argues that defendant failed to

prove: (1) that he was engaged in a joint venture with defendant,* and (2) that the judgment was satisfied.

■■ Relying heavily upon *Richton v. Farina*, 14 Ill.App.3d 697, 303 N.E.2d 218, plaintiff first argues that defendant failed to prove that he was engaged in a joint venture with her. A joint venture is an association of persons jointly undertaking some commercial enterprise. It requires "a community of interest in the performance of a common purpose, a proprietary interest in the subject matter, a right to direct and govern the policy in connection therewith, and a duty, which may be altered by agreement, to share both in profit and losses." (*Carroll v. Caldwell*, 12 Ill.2d 487, 497, 147 N.E.2d 69, 74.) The intent of the parties is the most significant factor in determining whether a joint venture exists. (*Maimon v. Telman*, 400 Ill.2d 535, 240 N.E.2d 652.) A written agreement is not required to form a joint venture and the existence of a joint venture may be inferred from a variety of facts and circumstances. *Reese v. Melahn*, 53 Ill.2d 508, 292 N.E.2d 375; *Ditis v. Ahlvin Construction Co.*, 408 Ill. 416, 97 N.E.2d 244; *In re Estate of Sugar*, 22 Ill.App.3d 484, 317 N.E.2d 685.

In the instant case, while plaintiff argued that he had loaned money to defendant, the trial court determined that he had contributed capital to their joint venture. Moreover, the evidence adduced at trial supports the trial court's conclusion. Defendant testified that she and plaintiff jointly agreed to develop the property defendant then owned. Plaintiff was to contribute in cash approximately the same amount as defendant's contribution—her equity in the property. Moreover, defendant's testimony was corroborated by that of Marie Farella, defendant's former employee. Farella overheard plaintiff and defendant talking about a joint venture. She later observed plaintiff at the building site on several occasions and heard plaintiff arguing with defendant about the selection of subcontracts. Furthermore, the evidence is clear that plaintiff issued six checks for the payment of various expenses of developing the property. Plaintiff admitted having no agreement with defendant regarding interest on these considerable amounts at the time he made the payments. Plaintiff also admitted arranging for the delivery of a construction trailer, at no charge, to the building site. On the basis of these facts, upon weighing the evidence, the trial court could properly have determined that the parties had entered a joint venture.

Notwithstanding the testimony of plaintiff and his attorney, since the

---

* We use the term "defendant" in the remainder of the opinion in reference to Yvonne Klein. Her husband, Reuben, was only incidentally involved in the case.

trial court believed defendant's testimony regarding the joint venture, it must also have believed her testimony regarding the termination of the joint venture and the origin of the judgment note which was the subject matter of plaintiff's action. Defendant testified that notwithstanding their agreement, in the spring of 1966, plaintiff refused to contribute further funds to the project. However, since defendant wanted to complete the project, she reinmbursed him for his contribution in the form of the judgment note. The note, prepared by and at the insistence of plaintiff's attorney, was back-dated to December 1, 1965, and was signed by defendant and her husband. When defendant mailed plaintiff the note, she included a letter which referred to the note as a loan and made no reference to a joint venture. However, in the circumstances of this case, we do not believe that either the letter or the note are inconsistent with the prior existence of a joint venture. Clearly, the note evidenced the change of the form of plaintiff's investment, in the spring of 1966, from capital to debt and also evidenced the termination of the joint venture.

Plaintiff also suggests that defendant failed to prove that the judgment was satisfied. In September of 1966, plaintiff sued on the note and judgment was entered as confessed. When defendant was unable to secure further financing for the project, her creditors initiated procedures to enforce their claims. By the fall of 1967, defendant believed that her creditors were attempting to "pierce the corporate veil" of Y-K Builders, Inc., defendant's construction company, which had acted as general contractor on the project. She testified that, in these circumstances, she contacted plaintiff telling him that if he released her from the judgment, she would shield him from liability for the debts of the joint venture by turning the property over to her creditors. Although plaintiff denies it, defendant insists that plaintiff agreed to the arrangement, and explains that no formal satisfaction of the judgment was entered because the creditors might have discovered plaintiff's participation in the project.

Plaintiff insists that no agreement to satisfy the judgment was concluded. In particular, he points to the absence of documentary evidence supporting defendant's position. However, documentary evidence is not required to prove the existence of an agreement particularly where the Statute of Frauds is inapplicable. Moreover, defendant's explanation of the absence of such proof was not unreasonable in the circumstances. Since plaintiff had participated in the joint venture, it is not inconceivable that, if his participation became known, the creditors of the joint venture could recover their losses from him.

■■ Whether an agreement was concluded was a question of fact to be resolved, in the instant case, by the trial court. Although plaintiff denied the existence of the agreement, defendant confirmed its existence.

Thus, whether such an agreement was concluded resolves to a question of credibility. Here the court observed the demeanor of both witnesses and found for defendant. After studying the record here, we believe the trial court's finding on this issue was correct.

■■ Plaintiff next contends that the agreement to satisfy the judgment violated the Statute of Frauds. The statute (Ill. Rev. Stat. 1965, ch. 59, par. 1), in relevant part, provides:

> "That no action shall be brought, * * * whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person, * * * or upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."

Plaintiff argues that the statute is applicable because the agreement is one to pay the debts of another and because the agreement could not be performed in one year.

First, we do not believe the instant agreement to satisfy the judgment is one to pay the debts of another as contemplated by the statute. The agreement was that defendant would shield plaintiff from the venture's creditors if he released the judgment. This agreement does not run to some third party; it runs to plaintiff. No suretyship situation was contemplated and the statute is inapplicable.

Second, we believe the agreement could be performed in one year. Defendant was to shield plaintiff by conveying her property to the venture's creditors. Clearly such an act could easily be performed in one year, and was substantially performed within that time. Therefore, the Statute of Frauds was inapplicable to the instant agreement in satisfaction of the judgment.

■■ Plaintiff lastly contends that the trial court lost its jurisdiction when plaintiff filed his original notice of appeal and therefore erred in entering the money judgment for $24,880 which reimbursed defendant for the money she had paid to prevent plaintiff from levying on her furniture. The law is clear that the filing of a timely notice of appeal causes jurisdiction of the reviewing court to attach instanter and deprives the trial court of its jurisdiction. (*City of Chicago v. Myers*, 37 Ill.2d 470, 227 N.E.2d 760; *County of Cook v. Priester*, 22 Ill.App.3d 964, 318 N.E.2d 327.) Therefore, the trial court did not have jurisdiction to enter the money judgment and that order must be reversed.

The order finding that the judgment by confession had been satisfied

is affirmed and the money judgment entered after plaintiff had filed his original notice of appeal is reversed.

Affirmed in part; reversed in part.

BARRETT, P. J., concurs.

Mr. JUSTICE SULLIVAN, dissenting:

I must respectfully dissent from the decision of my colleagues that plaintiff and defendants were engaged in a joint venture, as that concept is commonly understood, to develop the subject property. Although it is true that the intent of the parties is most significant in determining the existence of a joint venture and that a joint venture may be inferred from the conduct of the parties, I fail to see how any indicia of such status are reflected in the conduct of the parties here.

The evidence does disclose that plaintiff contributed sums of money to the undertaking of Y-K Builders, a construction company owned by Mrs. Klein which was to serve as general contractor on the project; that he expressed an interest in the progress of the work and also provide a construction trailer for the use of the development. However, these factors alone, in my opinion, do not establish that a joint venture was entered into between the parties. In fact, the various possibilities that can be ascribed to the arrangement raise as many indicators contrary to the establishment of a joint venture as those which favor it.

In *Richton v. Farina,* 14 Ill.App.3d 697, 303 N.E.2d 218, this court stated at page 706:

"[I]n addition to the requirement that a joint venture must have a contractual basis, either express or implied, we note that the decisions are in substantial agreement that the following factors must also be present: (a) a community of interest, (b) a proprietory interest in the subject matter, (c) a right to govern the policy in connection therewith, and (d) a sharing in both the profit and losses. (*Carroll v. Caldwell,* 12 Ill.2d 487, 147 N.E.2d 69; *Hagerman v. Schulte,* 349 Ill. 11, 181 N.E. 677; Williston, *Contracts,* sec. 318A (3d Ed. 1959).)"

My consideration of the record and the arguments presented indicates that although it might appear that plaintiff may have been desirous of assuming an equity position in the development, it could just as readily have been said that he was a lender having a creditor position. (This is borne out by the note subsequently signed by defendants and backdated.) In either event, without more substantial evidence, the position of plaintiff as either an investor or creditor, is insufficient to establish him as a joint venturer in the development of the property. Initially, it is noted

that although Mrs. Klein testified that she and plaintiff were each to have a one-half interest in the arrangement after the return of "capital contributions," there was apparently nothing said with respect to the ownership of the eventually completed development. If Mrs. Klein had predeceased plaintiff, because of the prohibitions of the Dead Man's Act[1], he would have been unable to establish any interest over and above the amounts he placed in the venture which, at that point, would more than likely have placed him in a creditor position. By the same token, if Mrs. Klein at any time chose to deny that plaintiff was entitled to an interest, he would have been unable to establish any such interest in the absence of some agreement or other evidence of ownership, e.g., stock certificates.

In addition, there is no substantive evidence reflecting any arrangement for the distribution of profits and the liability for losses. There was apparently no understanding in these regards inasmuch as plaintiff arbitrarily decided not to advance any further funds and thereafter made no effort to aid the troubled development. Obviously, Y-K Builders remained as the sole debtor of the development and, because it is indicated in defendants' brief that the "venture" was in a state of failure by the fall of 1966, it would seem that defendant's apparent decision not to seek contribution from her "co-venturer" to assist in paying creditors, strains any reason to the argument that a joint venture existed. This is particularly so in view of the fact that the claims of the creditors were far in excess of the $67,000 advanced by plaintiff.

Furthermore, although the funds advanced, together with the visits to the jobsite and the use of the trailer all tend to establish a degree of participation on the part of plaintiff, they do not evidence the type of control that warrants a finding that plaintiff was a joint venturer.

As indicated earlier, plaintiff may have been an investor or a creditor; in fact, he may have been both. However, it appears to me that the alleged status of joint venturer here is so lacking in supporting evidence that I am of the opinion that no such status existed and, while each case differs on its own facts, I would subscribe to the reasoning of *Richton,* which would negate any such relationship.

I agree with my colleagues that the judgment for $24,880 in favor of defendants and against plaintiff should be reversed but, for the reasons stated, I believe that the trial court erred as a matter of law in finding that the parties were engaged in a joint venture.

---

[1] Ill. Rev. Stat. 1973, ch. 51, par. 2.