HOME SAVINGS AND LOAN ASSOCIATION OF JOLIET *et al.*, Plaintiffs-Appellees, *v.* SAMUEL T. ISAAC AND ASSOCIATES, INC., *et al.*, Defendants-Appellants.

Third District    Nos. 81-126, 80-672 cons.

Opinion filed July 28, 1981.—Rehearing denied October 6, 1981.

Richard J. Aronson, of Chicago, for appellants.

William J. Holloway and Thomas L. Browne, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

This case comprises two appeals from the Circuit Court of Will County. Case No. 80-672 is an interlocutory appeal brought by the defendants from a November 25, 1980, order of the circuit court of Will County naming plaintiff Home Savings and Loan Association of Joliet (Home) receiver of the principal, interest, and other amounts due and owing mortgagee defendant Samuel T. Isaac and his corporation, Samuel T. Isaac and Association, Inc. (STI), under a 40-year note and mortgage securing plaintiffs' $6.6 million construction loan for the Salem Village III housing project in Joliet, and enjoining STI and Isaac from exercising any right or claim they may have in the note and mortgage. Case No. 81-126 is an appeal by defendants from an adverse summary judgment entered on February 20, 1981. As a result of the entry of summary judgment, constructive and resulting trusts were impressed upon the loan instruments held by defendants, these instruments were reformed to name plaintiffs as the parties in interest, and Isaac and STI were directed to execute to plaintiffs an assignment of all rights, title and interest defendants had in the loan documents. Home was also relieved of its duties as receiver.

Numerous issues are raised by defendants in each appeal. For the sake of simplicity, we will address the merits of each appeal separately. First, however, we will present the pertinent facts.

Samuel T. Isaac, a Lexington, Kentucky, mortgage banker, through his corporation STI, was to arrange financing for the construction of the Salem Village III housing project in Joliet. This project, which was the third of three such projects, was sponsored by the Lutheran Social Services of Illinois (LSSI) and would provide low rent housing for the elderly and handicapped.

In 1976, Isaac obtained commitments from plaintiffs, financial institutions in the Joliet area, to provide construction loans for the Salem Village III project. The terms of the loan agreement were virtually identical with the terms of the agreements for Salem Villages I and II, which had been successfully completed. Under this loan agreement (the Participation Agreement) STI was named as mortgagee and payee on the 40-year note and mortgage securing plaintiffs' $6.6 million construction loan. Salem Village III was mortgagor. The Participation Agreement provided that STI was to have full control over all documents, including the note and mortgage. STI was also obligated to service the construction loan. It was to receive the loan advance from the plaintiffs, pay the building contractors, receive the monthly mortgage interest payments from LSSI and the Department of Housing and Urban Development (which was to subsidize the interest payments made by LSSI), pay the insurance premiums, and transmit the monthly interest payments to plaintiffs. It is uncontested that plaintiffs entered into the participation agreement relying upon STI's representation that it would obtain long term permanent financing from the Government National Mortgage Association (GNMA). The plaintiffs understood that their construction loan would be repaid in full within 22 months of their first advance.

Despite STI's assurances that it would obtain a GNMA commitment, without notice to plaintiffs Isaac determined that he would seek private placement of the loan with the Teachers' Retirement System of Kentucky. The only benefits of private placement would be to defendants. STI could retain the GNMA fee of over $100,000, and in addition could service the permanent loan for a substantial fee during the 40-year term, which it would have been unable to do if long-term financing had been obtained from GNMA. However, because of the prevailing high interest rate Isaac was unable to obtain "private investor takeout." In May of 1979, subsequent to the date the construction phase of Salem Village III officially closed, one of the plaintiffs realized that no pay-off was forthcoming because no long-term permanent financing had been obtained. It was at this time that the Federal Home Loan Bank and the Federal Home Bank Board, from whom plaintiffs had borrowed the construction loan money, began to look to the plaintiffs for repayment. With no long-term financing available, plaintiffs concluded that an emergency existed.

In June of 1979, representatives of the plaintiffs went to Kentucky to meet with Isaac. In that month, and again in July, plaintiffs demanded that Isaac assign the note and mortgage to them. On both occasions Isaac refused, taking the position that STI had the right to sell the note to a private investor, even if the plaintiffs may incur a loss. Fearing that defendants would sell or otherwise encumber the loan documents, and concerned with the increasing delinquency of defendants' remittances of

principal and interest, plaintiffs brought the instant suit against Isaac and STI in August of 1979. In this action plaintiffs sought reformation of both the note and mortgage on the grounds that they had been procured by defendants' fraud. Plaintiffs also sought the impression of constructive and resulting trusts over these loan documents. To preserve the note and mortgage from the threat of sale during the pendency of the action, plaintiffs further sought the appointment of a receiver pendente lite and preliminary injunctive relief. The next month the case was removed to the Federal District Court for the Northern District of Illinois on petition by the Department of Housing and Urban Development.

During the next five months discovery proceeded, and the crumbling financial status of Isaac and STI came to light. An audit of STI's books and records on all three Salem Village projects by the HUD office of Inspector General disclosed a number of other misrepresentations by defendants. As a result of these disclosures, plaintiffs sought the issuance of a temporary restraining order in March of 1980 for the purpose of preventing the delivery of the March principal and interest payments to STI. The temporary restraining order was entered on March 14, 1980.

In September, the Federal district court, finding that Federal jurisdiction did not exist because HUD was too nominal a party, remanded the cause to the circuit court of Will County. Following a hearing, the circuit court entered the order which is the subject of the interlocutory appeal (No. 80-672) on November 25, 1980. In its order, the court found, *inter alia*, that defendants fraudulently induced plaintiffs to advance construction funds for the Salem Village III project by knowingly misrepresenting the fact that defendants would seek and obtain a GNMA commitment for long-term financing, and that it was as a result of this fraud that defendants held the note and mortgage. Finding that "threatened injury to HUD, Salem Village defendants and to the plaintiffs by voluntary or involuntary sale or encumbrance of the note and mortgage, failure to insure, dissipation of installments of principal and interest, [and] invasion of and use of escrows for purposes for which they were not intended outweighs any conceivable harm which the appointment of a receiver and preliminary injunction order may cause to defendants Isaac and STI," the court granted plaintiffs equitable relief in the form of a receivership and preliminary injunction. Plaintiff Home was appointed as receiver, and was accordingly charged with the responsibility of collecting all amounts due in connection with the Salem Village III construction loan, as well as with making all necessary disbursements. The receiver was also to pay defendants the service fee, on the condition that STI and Isaac turned over all amounts and documents held in connection with the loan. Home was further required to make a monthly accounting to the circuit court. HUD, Salem Village III, and LSSI were ordered to make all

future principal and interest payments to Home as receiver, and defendants were enjoined from exercising any right they may have had in the loan documents. Timely notice of interlocutory appeal (Ill. Rev. Stat. 1979, ch. 110A, par. 307(a)(1), (2)) was filed by defendants on December 18, 1980.

During the pendency of the interlocutory appeal, the circuit court entertained plaintiffs' motion for summary judgment. On February 20, 1981, summary judgment was entered for plaintiffs on three counts of the eight-count amended complaint. The court granted partial summary judgment on count I of the amended complaint, which alleged common law fraud by defendants, and also granted summary judgment on counts V and VI, which resulted in the imposition of constructive and resulting trusts over the note and mortgage. As previously stated, as a result of the February 20 order the loan instruments were reformed to name plaintiffs as the parties in interest, and defendants were ordered to assign all rights, title and interest they had in the loan documents to the plaintiffs. Both the receivership and the preliminary injunction were terminated. Following a denial of defendants' motion to stay the order of summary judgment pending appeal on March 4, timely notice of appeal was filed the next day.

Pursuant to an emergency motion by defendants filed on March 13, this court entered a temporary stay of enforcement of the February 20 and March 4 orders conditioned upon the filing of a $1,350,000 bond with the clerk of the appellate court. No bond was ever posted, and the stay was vacated April 7, 1981. Oral arguments on case No. 80-672 were heard the next day. On May 12, 1981, this court heard oral arguments on case No. 81-126.

With this factual and procedural background, we will now proceed to discuss the merits of each of defendants' appeals, beginning with the interlocutory appeal from the order of November 25, 1980 (No. 80-672).

On appeal from the November interlocutory order, defendants raise five issues: First, whether it was error for the circuit court to grant the equitable relief of a receivership and a preliminary injunction in the absence of "a showing of extreme urgency"; second, whether it was error to appoint a receiver and impose a preliminary injunction when such actions alter the status quo; third, whether it was error to appoint plaintiff Home, an adverse party, as receiver; fourth, whether it was error to enjoin defendants from performing a valid, legal act, *i.e.*, selling the note and mortgage to a permanent mortgage lender; and finally, was it error for the circuit court to make ultimate findings of fact as a basis for granting the equitable relief requested by plaintiffs. We will address each of these assignments of error in turn.

■■ The defendants' first contention is that plaintiffs' seven- to 10-month delay in filing a petition for equitable relief negates any sense of urgency

upon which the granting of the relief request must be based (see, *e.g.*, *Naxon Telesign Corp. v. Selig* (1962), 38 Ill. App. 2d 242, 186 N.E.2d 666). Although we believe the delay to be closer to three months,[1] even given a 10-month period, we do not believe the trial court erred in granting the equitable relief plaintiffs requested because the court did not base its decision solely on the basis of facts known at any particular time. The plaintiffs' goal in seeking equitable relief was to prevent defendants from selling the note and mortgage to a private investor at a loss, and to prevent dissipation of principal and interest payments made by the mortgagor. In its November 25 order, the court found that defendants' "record of handling the Salem III mortgage installments and escrows and other mortgages and the revocation of their qualifications as FHA mortgagee warrants the conclusion that future installments of principal and interest are in danger of dissipation if they pass under the possession and control of Isaac and STI." This clearly reveals that the court took into account a number of events aside from defendants' misrepresentations and failure to obtain permanent financing before granting plaintiffs the equitable relief they had requested. All of these events occurred subsequent to May of 1979. In fact, the revocation of defendants' qualifications as FHA mortgagee did not occur until October 6, 1980. Because the occurrence of a number of events created the condition necessitating the imposition of the equitable relief sought by plaintiffs, we cannot accept defendants' argument that the plaintiffs were dilatory. The "emergency situation" was not magically created overnight; it evolved over a period of time. Although it is an open question whether the situation in May of 1979 would have justified the imposition of the equitable relief eventually obtained by plaintiffs, the situation in November of 1980 certainly warranted it.

■■ ■ Further, on review "[t]he sole role of an appellate court in addressing the grant or refusal of an interlocutory decree is narrowly restricted to a determination of whether the judge correctly exercised his broad discretionary power." (*Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 1011, 326 N.E.2d 180, 183.) As plaintiffs point out on appeal, of the two forms of equitable relief afforded by the court—the receivership and the preliminary injunction—the former is the more important, as the injunctive relief merely serves to accomplish the objectives of the receivership. The requirements for a receivership were set forth by the supreme court in *Bagdonas v. Liberty Land & Investment Co.* (1923), 309 Ill. 103, 110, 140 N.E. 49, 52:

---

[1] All parties agree that it was in May of 1979 that plaintiffs learned no long term financing had been obtained by defendants. The instant lawsuit, which sought the appointment of a receiver pendente lite and other equitable relief, was filed in the circuit court of Will County in August of that same year.

"Application for the appointment of a receiver is addressed to the sound legal discretion of the court. It is a high and extraordinary remedy. The power is not arbitrary and should be exercised with caution and only where the court is satisfied there is imminent danger of loss if it is not exercised. The general rule is that the applicant must show, first, that he has a clear right to the property itself or has some lien upon it, or that the property constitutes a special fund to which he has a right to resort for the satisfaction of his claim; and second, that the possession of the property by the defendant was obtained by fraud, or that the property itself, or the income arising from it, is in danger of loss from neglect, waste, misconduct or insolvency."

Because both of these requirements are present in the instant factual setting we do not believe the circuit court abused its discretionary power when it appointed a receiver. First, the property to be placed with the receiver, *i.e.*, principal, interest, and other sums of money to be paid defendants by LSSI and HUD as mortgagees, clearly belongs to plaintiffs. Defendants certainly have no rightful interest in the corpus of these funds. The only interest defendants can claim is one-half of one percent of the interest paid by HUD and Salem Village III, pursuant to the participation agreement. However, it would be inequitable to permit defendants to benefit by their fraud by recognizing an interest in these funds which would be nonexistent but for their misrepresentation. The second requirement, "that the possession of the property by the defendant was obtained by fraud, or that the property itself, or the income arising from it, is in danger of loss from neglect, waste, misconduct or insolvency." (*Bagdonas*, 309 Ill. 103, 110, 140 N.E.2d 49, 52), is also satisfied here. Not only was the property obtained as a result of defendants' knowing misrepresentation that long-term financing would be obtained from GNMA, but also defendants' past financial performance fully supports the court's conclusion "that future installments of principal and interest are in danger of dissipation if they pass under the possession and control of Isaac and STI."

■ The second issue raised by defendants is that it was error for the circuit court to grant a preliminary injunction and appoint a receiver because such action alters the status quo. Relying upon the concept of status quo as "the last, actual, peaceable, uncontested status which preceded the pending controversy" (*O'Brien v. Matual* (1957), 14 Ill. App. 2d 173, 187, 144 N.E.2d 446, 453), defendants argue that the imposition of a receivership altered the status quo by placing the note and mortgage with plaintiff Home. We agree with the plaintiffs, however, that a narrower concept of status quo is applicable here—"the status quo necessary to

prevent dissipation or destruction of the res in controversy." (*Keeshin v. Schultz* (1970), 128 Ill. App. 2d 460, 469, 262 N.E.2d 753, 757.) Although we tend to agree with defendants that the same goal could have been accomplished by enjoining defendants from transferring or otherwise encumbering the res, the facts here justified the imposition of a receivership, and as we have heretofore held, we find no abuse of discretion by the trial court in granting this particular form of equitable relief.

■■ Thirdly, defendants contend that the trial court erred in appointing as receiver Home Savings & Loan, an adverse party. The choice of a person or legal entity to act as receiver rests in the sound discretion of the court. However, "there are persons who, owing to their position, are not usually competent to act as such. A party to a suit is not competent, unless by consent of both parties." (*Benneson v. Bill* (1872), 62 Ill. 408, 411.) In the instant case, defendants Isaac and STI objected to Home's appointment. Defendants' objections, however, do not preclude the trial court, in its discretion, from appointing Home to act as receiver of the principal, interest, and other amounts due defendants pursuant to the note and mortgage. The present advantages of appointing Home as receiver pendente lite far outweigh any speculative disadvantages. Home was found by the trial court to be a responsible financial institution qualified as an FHA mortgagee and experienced in servicing mortgages. Located in Joliet, it is within the jurisdiction of the circuit court of Will County to which it was ordered to make a monthly accounting of receipts and disbursements pursuant to the November 25 order. Further, as a party plaintiff, Home is obviously familiar with the financing arrangements of the Salem Village III project. Neither the mortgagors nor the plaintiff financial institutions objected to Home's appointment. The only objection was made by defendants, who did not offer any evidence on the subject of Home's alleged unfitness as a receiver. Finally, Home has saved all parties the not insignificant cost of appointing an independent receiver by agreeing to serve as receiver without fee. Under these facts, we do not think that the appointment of Home, albeit an adverse party, reflects an abuse of the discretion afforded the court in its selection of a receiver.

■■ Defendant next argues that the trial court erred in granting the preliminary injunction because it prevented the defendants from performing a valid, legal act, *i.e.*, selling the note and mortgage to a permanent investor, even though such sale would result in a financial loss to plaintiffs. We find this contention to be meritless. Clearly, were it not for defendants' misrepresentation regarding intention to obtain a GNMA commitment, plaintiffs would not have entered into the participation agreement for Salem Village III, and defendants would not be serving as

mortgagee. Defendants are now claiming that their status, which they have achieved only through fraud, allows them to further harm the parties they have defrauded. Equity will not permit such a result.

■■ Finally, the defendant urges this court to reverse the November 25 order because the circuit court erroneously made ultimate findings of fact in that order. However, not only were the findings of fact made by the court necessary to justify the granting of the equitable relief requested by plaintiffs, but in the order the court expressly stated that the findings were "for purposes of the petition for appointment of a receiver and preliminary injunction * * *." In no sense were the court's findings ultimate findings of fact. Accordingly, we find no error here.

For the foregoing reasons, we affirm the interlocutory order of November 25, 1980, and rule in plaintiffs' favor in appeal No. 80-672. We will now direct our attention to appeal No. 81-126, and firstly discuss a jurisdictional issue.

■■■ As one of the issues on appeal, defendants contend that the circuit court had no jurisdiction to dissolve the receivership and preliminary injunction imposed by the November 25 order once timely notice of appeal was filed from that interlocutory order on December 18. It is well settled that the filing of a notice of appeal from an interlocutory order (here, Ill. Rev. Stat. 1979, ch. 110A, par. 307(a)(1), (2)), does not divest the trial court of all jurisdiction in a case. It does, however, restrain the trial court from either changing or modifying the interlocutory order (*Payne v. Coates-Miller, Inc.* (1979), 68 Ill. App. 3d 601, 386 N.E.2d 398; *Cygnar v. Martin-Trigona* (1975), 26 Ill. App. 3d 291, 325 N.E.2d 76; see *City of Chicago v. Myers* (1967), 37 Ill. 2d 470, 227 N.E.2d 760; *Landfill, Inc. v. Pollution Control Board* (1977), 52 Ill. App. 3d 154, 367 N.E.2d 347; *Russell v. Klein* (1975), 33 Ill. App. 3d 1005, 339 N.E.2d 510; *Shapiro v. Shapiro* (1969), 113 Ill. App. 2d 374, 252 N.E.2d 93). "[O]nce the jurisdiction of the appellate court attaches by reason of the filing of a notice of appeal, the trial court is without jurisdiction to take any further action insofar as the notice of appeal affects the subject that the trial court might seek to act upon. [Citation.] The trial court retains jurisdiction, however, to hear and determine matters arising independent of and unrelated to that portion of the proceeding that pends on appeal." (*Cygnar,* 26 Ill. App. 3d 291, 293, 325 N.E.2d 76, 78.) Here, the circuit court's action in terminating the receivership and dissolving the preliminary injunction affected the very subject matter of the prior appeal. Because the propriety of the equitable relief granted by the interlocutory order of November 25 was at issue in appeal No. 80-672, the trial court was without jurisdiction to enter an order affecting in any way the receivership or the injunction once notice of appeal from that interlocutory order was filed. Accordingly, we consider that portion of the court's

order terminating the receivership and dissolving the preliminary injunction to be a nullity.

■■ Similarly, we believe the circuit court was without jurisdiction to enter summary judgment for plaintiffs in counts V and VI of plaintiffs' amended complaint, which resulted in the imposition of constructive and resulting trusts over the note and mortgage. At the time notice of appeal was filed from the November 25 interlocutory order on December 18, the status of all litigants with regard to the note and mortgage was frozen. The entry of the subsequent summary judgment not only altered the litigants' status by declaring plaintiffs to be the real parties in interest to the loan documents, but also eliminated the need for the equitable relief previously granted. In short, it rendered the question of the propriety of the equitable relief moot. Once notice of appeal was filed from the interlocutory order, the circuit court had no jurisdiction to take action directly or indirectly affecting the jurisdiction of this court to consider the merits of the pending interlocutory appeal. (*Cygnar.*) The entry of summary judgment on counts V and VI certainly affected this court's jurisdiction by eliminating the need to decide appeal No. 80-672 on its merits. As a consequence, we hold that the circuit court exceeded its jurisdiction by entering summary judgment on counts V and VI, and we accordingly deem that portion of the February 20 order void.

Our holding that the circuit court of Will County did not have the jurisdiction to impose constructive and resulting trusts on the loan documents and to dissolve the receivership and preliminary injunction imposed by the November 25 order while the appeal from that order was pending in this court obviates any discussion of four of the seven issues raised by defendants on appeal from the February 20 order. The only two issues remaining are whether the trial court erred in imposing a "partial summary judgment" on count I of the plaintiffs' amended complaint alleging common law fraud when there existed genuine issues of material fact, and similarly, whether it was error for the trial court to enter summary judgment on count I when there existed a conflict on two key elements of common law fraud, intent to defraud and reliance. Because of the similarity of these two issues, we will consider them simultaneously.

■■ Firstly, plaintiffs attack the appealability of that portion of the February 20 order granting "partial summary judgment" in plaintiffs' favor on count I of their amended complaint. "To be final and appealable, a judgment or order must terminate the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with the execution of the judgment." (*Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 48, 147 N.E.2d 371, 372.) Plaintiffs contend that if the partial summary judgment as to count I were affirmed, the trial court could not proceed with the execution of the judgment because the

damages issue has not yet been decided. Consequently, they argue that the partial summary judgment is not appealable. We disagree. "While the order need not dispose of all the issues presented by the pleadings, it must be final in the sense that it disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof." (*Szczesny*, 13 Ill. 2d 45, 48, 147 N.E.2d 371, 372.) Insofar as the partial summary judgment determined the issue of liability, a "definite and separate part" of the instant lawsuit, it is appealable.

■■ The entry of summary judgment is limited to those cases wherein the pleadings, depositions, and admissions on file, together with accompanying affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Ill. Rev. Stat. 1979, ch. 110, par. 57(3).) Defendants contend that the entry of summary judgment on the issue of common law fraud was erroneous, because two genuine issues of material fact exist, first on the subject of intent to defraud, and second, on the subject of plaintiffs' justifiable reliance upon defendants' assurances regarding a GNMA commitment.

■■ We find both of these contentions to be without merit. With regard to evidence of intent to defraud, it is unrefuted that defendants, through Isaac, failed to disclose to plaintiffs their conscious failure to obtain a GNMA commitment. Knowing that plaintiffs agreed to loan $6.6 million for the construction of the Salem Village III project upon the condition that defendants would obtain a long term financing commitment from GNMA, defendants failed to inform them that no such commitment would be forthcoming, a fact known to defendants as early as October 1976. This failure to disclose on defendants' part when defendants were committed to so obtain and when a duty to disclose existed is tantamount to an actual misrepresentation, and constitutes fraud. (*Crowell v. Bilandic* (1979), 77 Ill. App. 3d 162, 395 N.E.2d 1023; *Dendrinos v. Dendrinos* (1978), 58 Ill. App. 3d 639, 374 N.E.2d 1016.) As to defendants' contention that plaintiffs should have made an independent investigation before they decided to rely upon Isaacs' representation that he would obtain a GNMA commitment, the Illinois Supreme Court has stated "[a]s a general rule one who is guilty of fraudulent misrepresentation cannot interpose a defense that the person defrauded was negligent in failing to discover the truth." (*Schmidt v. Landfield* (1960), 70 Ill. 2d 89, 94, 169 N.E.2d 229, 231.) Given the fact that Salem Villages I and II were completed without financial difficulty, plaintiffs were justified in relying upon defendants' assurances and should not have been expected to investigate whether defendants' representations were true at the time they were made.

Accordingly, we affirm the summary judgment as to count I of the plaintiffs' amended complaint, but vacate that portion of the February 20 order granting summary judgment on counts V and VI of plaintiffs'

amended complaint, and terminating the receivership and preliminary injunction imposed by the interlocutory order of November 25, 1980. This cause is consequently remanded for proceedings consistent with this opinion.

Appeal No. 80-672—Affirmed.
Appeal No. 81-126—Affirmed in part, vacated in part and remanded.

SCOTT, P. J., and ALLOY, J., concur.