37618.   CHRONISTER *v.* CITY OF ATLANTA.

Decided April 24, 1959.

*Smith, Swift, Currie & McGhee, Charles L. Weltner,* for plaintiff in error.

*J. C. Savage, Charles M. Lokey,* contra.

Townsend, Judge. ■ The allegations of the petition as to noise and vibration are omitted here following the decisions in

*Delta Air Corp.* v. *Kersey,* 193 *Ga.* 862 (1) (20 S. E. 2d 245, 140 A.L.R. 1352) that, where there is no allegation in the petition to show that the noises complained of are not those incident to the ordinary and necessary use of an airport, or result from its operation in an improper and negligent manner, they cannot be said to constitute a nuisance.

■ The petition, if it states a cause of action, must do so on the proposition that (a) flight over plaintiff's home by numbers of aircraft at a height of from 50 to 100 feet is an invasion of his rights for which he may demand redress because of the danger, hazard, and injury to the health of himself and his family alleged in the petition and (b) that the municipality is at fault in the maintenance of this condition in such manner as to render it liable for damages resulting from the nuisance.

■ "Flight in aircraft over the lands and waters is lawful, unless at such a low altitude as to interfere with the then existing reasonable use to which the land or water or space over the land or water is put by the owner of the land or water; or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath." Code § 11-101. "Repeated flights over the land of another owner at such a low height as to be dangerous to the health and life of the owner amount to a nuisance; and this is true though such low flights are necessary in order to use an adjoining airport." *Delta Air Corp.* v. *Kersey,* 193 *Ga.* 862 (2), supra. In *Scott* v. *Dudley,* 214 *Ga.* 565, 568 (105 S. E. 2d 752), it was stated: "Still, the owner of the land is a 'preferred claimant' to the air space above it, and he is entitled to redress for any use thereof which results in an injury to him or to his property, and we think it can be safely asserted that the owner of land has title to and a right to control the air space above it to a distance of at least 75 feet above his buildings thereon; but we are not here holding that his title to the air space above his land is limited to an altitude of that height." Accordingly, the plaintiff here has shown recoverable damages resulting from the manner of operating the aircraft entering and leaving the airport so as to constitute a nuisance.

■ In the *Kersey* case the various offending airlines and the City of Atlanta, owner of the airport, were joined as defendants,

■

and equitable relief was sought against all. In *City of Atlanta* v. *Cherry,* 84 *Ga. App.* 728 (67 S. E. 2d 317), where the same joinder occurred, only damages were sought, and a special demurrer challenging the petition on the ground of misjoinder of parties defendant was held meritorious. The plaintiff here originally sought to join the City of Atlanta and various airlines as parties defendant, but voluntarily dismissed all defendants except the municipality. It is alleged that this defendant constructed the runway in question after the plaintiff purchased his property; that it exercises general supervision and control over the airport, and that it refuses to exercise this supervisory power and control over the airlines using its facilities in such manner as to prohibit them from making the improper flights at low altitudes over the plaintiff's premises. This would, under the case of *Scott* v. *Dudley,* 214 *Ga.* 565, supra, be sufficient to state a cause of action against the defendant. However, it is contended that the cases should be distinguished and a different rule applied because Scott was the owner of a private airport whereas the City of Atlanta operates a public airport subject to the regulatory direction of the Civil Aeronautics Board and the Administrator of Civil Aeronautics, agencies of the Federal Government whose rules and regulations pursuant to Federal statute have preempted and controlled the field of interstate aerial transportation and navigable air space to the extent that it must appear, as a matter of law, that the defendant here has no supervisory powers or power of control over the manner in which aircraft belonging to the companies who lease or otherwise make use of the facilities provided by the defendant land and take off from the field and the various runways, including the one of which the plaintiff complains. Analysis of the two cases primarily relied upon by the defendant in error will answer this contention. In Allegheny Airlines, Inc. *v.* Village of Cedarhurst, 238 F.2d 812 (1956), the village enacted an ordinance prohibiting flights by aircraft over its territorial limits at an altitude of less than 1,000 feet. The Port of New York Authority, which was the agency operating the airport in question, together with various airlines and individual pilots, obtained a ruling that the ordinance was unconstitutional, citing 49 U.S.C.A. § 551 (a) (7),

here relied on by defendant in error which empowered the Civil Aeronautics Board to promote safety of flights in air commerce by prescribing: "(7) Air traffic rules governing the flight of . . . aircraft, including rules as to safe altitudes of flight and rules for the prevention of collisions between aircraft, and between aircraft and land or water vehicles." (This language is now to be found in 49 U.S.C.A. Supp. § 1348(c), giving such power to the Administrator of the Federal Aviation Agency). The court held that this placed within the public domain not only the right to air space necessary and incident to safe landings and take-offs, so that "the federal regulatory system has preempted the field below as well as above 1,000 feet from the ground." The decision accordingly declared the ordinance invalid, and further stated that there was "no evidence that the operations constitute a trespass or nuisance to the people of the Village." In City of Newark v. Eastern Airlines, Inc., 159 F. Supp. 750 (1958), various municipalities and individuals filed an action in two counts against various airlines, the Port of New York Authority, which managed the airport in question, being an intervenor in that case. The plaintiffs sought relief against the airlines on the theories of both nuisance and trespass, and prayed for injunction and damages. As to the nuisance count, the decision was limited to a "Memorandum of Relief Sought" filed by the plaintiffs, which the court interpreted as a request to it to modify, as to the defendant airlines, the rules and regulations of the Civil Aeronautics Board pursuant to 49 U.S.C.A. § 551, supra, and stated "an attempted amendment of the present regulations by the court, coupled with a modification of the operations specifications, if such modification becomes necessary, would be an unwarranted interference with the regulatory power vested in the Civil Aeronautics Board and could result only in an unseemly conflict between the administrative agency and the court." The effect of this decision, as applied in this State under the decisions of our Supreme Court in the *Kersey* and *Scott* cases, supra, and in *Thrasher* v. *City of Atlanta*, 178 *Ga.* 514 (173 S. E. 817) must result in the conclusion that, as to airlines, their use of air space in taking off and landing from public airports is entirely subject to a minute and exclusive directory

regulation stemming from the Federal Government, and that what they do, when done in lawful obedience to this authority may not be the subject of the sort of injunction the effect of which would be to contravene the rules prescribed by the proper Federal agency to whom the Federal Government which has preempted the field has turned over the administration of, among other things, flight patterns in landing and taking off from approved airports. As to damages, it was held only that the evidence was insufficient. It will be observed that in none of these Federal court cases was injunction or damages sought against the agency operating the airport, as appears here and also in the *Kersey* case. We readily agree with the distinction urged by the defendant that the *Kersey* case was primarily laid upon improper maintenance. There is no allegation that the southwest runway was so constructed that flights from it necessarily invaded the reasonable use by the plaintiff of his property. In fact, the negligence is predicated solely on the fact that the defendant refuses to "prohibit" the airplanes using its field from so doing, which itself suggests that the low altitude flights are unnecessary and improper. If this is true, no reason appears at this stage of the proceedings why the defendant could and should not make such improper use of its field the subject of its own supervisory power and control which the petition here alleges it to have. If, on the other hand, it appears upon the trial of the case that the conditions alleged by the plaintiff exist in fact, and that the airplanes, following the traffic patterns and maintaining the altitudes prescribed by the Federal regulatory agency, have no alternative but to invade the plaintiff's property in such manner as to constitute nuisance, then this defendant, by maintaining an airport of which such invasion is an unavoidable incident, is itself maintaining the nuisance and may be held liable in damages. In Swetland *v.* Curtiss Airports Corp., 55 F.2d 201, 203, it was pointed out that the regulation promulgated by the Department of Commerce as to flight altitudes "does not determine the rights of the surface owner, either as to trespass or nuisance."

While the right to regulate and control the flight of airplanes in interstate commerce is vested in the Federal Government un-

der the Commerce Clause of the Federal Constitution, the Federal Government cannot invade the rights of the people of the sovereign states so as to regulate them as between themselves. This governmental function and power has not been granted to the Federal Government. On the contrary it is reserved in the states by the tenth amendment. Accordingly, as indicated by the Swetland case, the fact that the location and altitude of landing operations is subject to Federal control does not in any manner determine whether the rights of a surface owner have been violated by such flights. Such an owner has a remedy against the person, corporation or agency responsible for the invasion. This petition alleges that responsibility to be in the defendant who controls the airport facilities, and must be taken as true on demurrer. The relationship of landlord and tenant not being alleged here, this court has not considered the application of the law of nuisance to such relationships, as to which see Meloy *v.* City of Santa Monica, 124 Cal. App. 622 (12 P. 2d 1072), and *Edgar* v. *Walker,* 106 *Ga.* 454 (2) (32 S. E. 582). The defendant here is a governing authority, and if it appears that the expanded use to which it puts its airport invades the property rights of adjacent owners, it has the same remedies for curing the situation, by condemnation or otherwise, as exist where it chooses a location in the first instance and locates an airport thereon. The layout of the field may be entirely proper from the standpoint of air safety and air traffic regulations, and may still constitute a nuisance as to a property owner contiguous thereto if the end result is to compel, authorize, or acquiesce in flights over such owner's home at altitudes of 50 to 100 feet which result in special damage to him.

The petition set out a cause of action as against general demurrer, and the trial court erred in dismissing it.

*Judgment reversed. Carlisle, J., concurs. Gardner, P. J., concurs specially.*

GARDNER, Presiding Judge, concurring specially. I agree and concur with the conclusion and result reached by the majority of the court, but I cannot agree, without reservation uncategorically, with the statement made in headnote 2(a) and the corresponding division of the opinion that the "owner of land is a

preferred claimant to the air space above it reasonably incident to the normal and necessary use of the premises, and to a distance of at least 75 feet above the buildings thereon." This statement and ruling purports to be predicated upon a proper construction of the provisions of Code § 11-101 that: "Flight in aircraft over the lands and waters is lawful, unless at such a low altitude as to interfere with the then existing reasonable use to which the land or water or space over the land or water is put by the owner of the land or water; or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath." The case of *Scott* v. *Dudley*, 214 *Ga.* 565, 568 (105 S. E. 2d 752) recently decided by the Supreme Court, in construing the provisions of said Code § 11-101, did not place upon the same the limited construction, as is now apparently being placed by the majority opinion of the Court of Appeals, but the Supreme Court merely ruled that "Still, the owner of the land is a 'preferred claimant' to the air space above it, and he is entitled to redress for any use thereof which results in an injury to him or to his property, and we think it can be safely asserted that the owner of land has title to and a right to control the air space above it to a distance of at least 75 feet above his buildings thereon; *but we are not here holding that his title to the air space above his land is limited to an altitude of that height.*" (Italic ours.)

As stated by the late Chief Justice Russell in his special concurrence in *Thrasher* v. *City of Atlanta*, 178 *Ga.* 514, 532 (173 S. E. 817) taking into consideration the law of aviation, which is still in its infancy, and the questions involving same which are so fundamentally attached to the dearest rights of our citizens, not only now but for all future time, "I wish to state that in concurring in the main in the splendid opinion prepared for the court I by no means concur in anything that is said either in the opinion or the headnotes which would contravene my view that at common law, as well as under the Code, 'The right of the owner of lands extends downward and upward indefinitely' (Civil Code of 1910, § 3617) [Code of 1933, § 85-201], and 'The owner of realty having title downwards and upwards indefinitely, an unlawful interference with his rights, below or above the sur-

face, alike give him a right of action' (§ 4477) [Code of 1933, § 105-1409]." See *Delta Air Corp.* v. *Kersey,* 193 *Ga.* 862 (20 S. E. 2d 245). I must agree with the statements in that case, made on pages 868 and 869 that: "It is sufficient to say that the flight of aircraft across the land of another cannot be said to be a trespass without taking into consideration the question of altitude . . . While there can hardly be any doubt that an owner of land on which his home is located must be said to have legal title to the air space above his land to a distance of at least *fifty* feet [Italics mine], with the consequence that any flight by aircraft within this space constitutes a trespass . . ." It was further said by Chief Justice Russell in the special concurrence in the *Thrasher* case, supra, that: "The height above the surface at which the flying is to be pursued cannot be arbitrarily fixed by those who expect to do the aerial navigation, except in proper proceedings or as a matter of contract with the owner of the soil. I am content to make this general statement of my objections, which of course includes any inference or intimation in the opinion which may conflict therewith."

Prior to the advent of aircraft and of their frequent and necessary flights over the lands of others, as well as the waters of the earth, it was generally understood that the owner of land owned and controlled the air space to an indefinite distance above his lands. The majority opinion in the instant case states that such ownership and control is a limited one and that while "The owner of land is a preferred claimant to the air space above it reasonably incident to the normal and necessary use of the premises" same is only "to a distance of at least 75 feet above the buildings thereon", and such statement and ruling seem to place the right of a landowner to title and control of the air space over his land to only 75 feet above any buildings located thereon.

I am therefore not inclined to agree with this statement and the resulting ruling which seems to limit the rights of one owning realty to the control and ownership of the air space above his lands to such specifically limited and definite height above such lands.

It follows that while I agree with the decision and the con-

456

clusion reached that the plaintiff landowner in his petition set out a cause of action against the defendant municipality as the owner of and as having control of the portion of the Atlanta airport adjacent to his land relative to the flying of planes over the same at a low altitude, I cannot agree with the statement in the opinion that the owner of such realty only has ownership thereto "reasonably incident to the normal and necessary use of the premises, and to a distance of at least 75 feet above the buildings thereon." In my opinion and judgment at this advanced age and era of fixed wing and other now known means of flying, the owner of realty continues to have ownership and title to the air space above him and to the ground beneath him, subject to the reasonable use thereof by aircraft and to the rights of mining, etc. I am forced not to agree with the holding of the majority as indicated. The matter resolves itself purely into a jury question as to the matter or nuisance value, and is not a question of law. The jury may determine both matters, i.e., the height above and the depth below the lands, basing such determination upon the particular facts involved in each case before them. In my opinion the question is not one of law for the determnation of this court.