60976. OWEN et al. v. CITY OF ATLANTA.

CARLEY, Judge.

Appellants are homeowners and residents living in close proximity to William B. Hartsfield Atlanta International Airport, a public airport facility owned, maintained and operated by the appellee-City of Atlanta. Appellants brought suit against the appellee in a multi-count complaint, alleging claims for inverse condemnation, nuisance and unlawful trespass arising "[a]s a direct and proximate result of the operation of the airport facility" and the routing of flights over their property. The appellee, conceding that appellants had stated a claim for inverse condemnation, moved for summary judgment as to the nuisance and unlawful trespass counts. The trial judge, relying in large part upon City of Burbank v. Lockheed Air Terminal, Inc., 411 U. S. 624 (36 LE2d 547, 93 SC 1854) (1973), held that appellants' nuisance and trespass claims were preempted by federal regulation of aircraft flights. Appellants appeal, urging that their claims have not been preempted by federal regulation.

The doctrine of preemption by federal regulation was first stated in Cooley v. Board of Wardens, 53 U. S. (12 How.) 299 (13 LE 996) (1851) in which the Supreme Court of the United States held: "Whatever subjects of this power [to regulate commerce] are in their nature national, or admit only of one uniform system, or plan of regulation, may justly be said to be of a nature as to require exclusive legislation by Congress." Cooley, 53 U. S. at 319, supra. The doctrine of preemption has been followed consistently since 1851 and has

resulted in the ousting of the states from concomitant regulation of a field of commerce subject to federal regulation if there are "persuasive reasons" therefor "— either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakenly so ordained. [Cit.]" Florida &c. Avocado Growers v. Paul, 373 U. S. 132, 142 (83 SC 1210, 10 LE2d 248) (1963). It was against this background of legal precedent and doctrine that the Supreme Court decided City of Burbank v. Lockheed Air Terminal, 411 U. S. 624, supra. The relevant facts in that case are simply stated: The City Council of Burbank had adopted a noise-abatement ordinance making it unlawful for jet aircraft to take off from the Hollywood-Burbank Airport, a privately owned facility, between the hours of 11 p.m. and 7 a.m. The owner-operator of the airport brought suit to enjoin enforcement of the ordinance. The Supreme Court found that the ordinance, which had been adopted by the city in the exercise of its police power rather than as the proprietor of the airport, was unconstitutional under the supremacy clause. "It is the pervasive nature of the scheme of federal regulation of aircraft noise that leads us to conclude that there is pre-emption." City of Burbank, 411 U. S. at 633, supra. However, the Court noted the limited scope of its holding. "[W]e are concerned here not with an ordinance imposed by the City of Burbank as 'proprietor' of the airport, but with the exercise of police power . . . We do not consider here what limits, if any, apply to a municipality as a proprietor." City of Burbank, 411 U. S. at 635, fn. 14, supra. Pretermitting this limitation on the scope of the holding in City of Burbank enunciated by the Court itself, that decision has been cited as authority for the proposition that "[s]ince the federal laws and regulations have preempted local control of aircraft flights, [cit.], the [proprietor of the airport and the airport and the airlines serving it] may not, to the extent they comply with such federal laws and regulations, be charged with negligence or creating a nuisance." Luedtke v. County of Milwaukee, 521 F2d 387, 391 (7th Cir. 1975). Other courts, however, noting the careful distinction drawn by the Supreme Court in City of Burbank between proprietary duties and police power regulation and that "Congress apparently intended to preserve the principle of substantial proprietary control over airport planning, design, and use," have held that an airport proprietor may be amenable to suit for the consequences of its land use planning decisions and improper use and maintenance of its ground facilities. Greater Westchester Homeowners Assn. v. City of Los Angeles, 160 Cal. Rptr. 733, 738 (Cal. S. C. 1979), cert. denied —— U. S. —— (100 SC 2149, 64 LE2d 786) (1980). In this case we are called upon to decide whether appellants' claims have been preempted by federal

regulation of aircraft flights.

We find that appellants' claims have not been preempted. As we interpret City of Burbank, that decision merely stands for the proposition that a non-proprietor municipality, acting under its *police power,* may not regulate the timing of aircraft landings. A non-proprietor may not exercise its police power in contravention of federal regulation in the same area. City of Burbank does not, however, stand for the proposition that federal regulation has ousted a proprietor from the exercise of *all* proprietary control over its own facility. As have several other courts, we construe footnote 14 of the City of Burbank decision as recognizing that the proprietor has the power to impose airport use restrictions where such restrictions are reasonable and nondiscriminatory. See generally British Airways Bd. v. Port Authority of N. Y., 564 F2d 1002 (2d Cir. 1977); British Airways Bd. v. Port Authority of N. Y., 558 F2d 75 (2d Cir. 1977); National Aviation v. City of Hayward, 418 FSupp. 417 (N. D. Calif. 1976). Furthermore, there is apparent agreement even among courts that adhere to a more restrictive interpretation of City of Burbank that, at the very least, proprietary control over management of ground facilities has not been federally preempted. See generally San Diego Unified Port Dist. v. Superior Ct., 136 Cal. Rptr. 557 (Cal. App. 1977); Air Transport Assn. of America v. Crotti, 389 FSupp. 58 (N. D. Cal. 1975). Preemption is, in our opinion, a doctrine which ousts *a state or other government* from the exercise of its *police power* in an area in which the power of the federal government is, by law or by implication, preeminent. Florida &c. Avocado Growers, 373 U. S. at 141, 142, supra. It is not a doctrine which invests an airport proprietor with impenetrable immunity from such liability as may arise from that proprietorship. Neither is preemption a doctrine behind which an airport proprietor whose facility creates a "nuisance" may hide, urging that its hands are tied because federal regulation has preempted all matters dealing with aircraft flights. "Nothing contained in this Chapter [the Federal Aviation Program] shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Chapter are in addition to such remedies." 49 USCA § 1506. The proprietor of an airport must bear its rightful share of the legal liability for all the damage and loss resulting from and occasioned by its facility.

Such has always been the analysis of this issue in Georgia. "While the right to regulate and control the flight of airplanes in interstate commerce is vested in the Federal Government under the Commerce Clause of the Federal Constitution, the Federal Government cannot invade the rights of the people of the sovereign states so as to regulate them as between themselves. This gov-

ernmental function and power has not been granted to the Federal Government. On the contrary it is reserved in the states by the tenth amendment. Accordingly, . . ., the fact that the location and altitude of landing operations is subject to Federal control does not in any manner determine whether the rights of a surface owner have been violated by such flights. Such an owner has a remedy against the person, corporation or agency responsible for the invasion. This petition alleges that responsibility to be in the defendant who controls the airport facilities, and must be taken as true . . . The defendant here is a governing authority, and if it appears that the expanded use to which it puts its airport invades the property rights of adjacent owners, it has the same remedies for curing the situation, by condemnation or otherwise, as exist where it chooses a location in the first instance and locates an airport thereon. The layout of the field may be entirely proper from the standpoint of air safety and air traffic regulations, and may still constitute a nuisance as to a property owner contiguous thereto if the end result is to compel, authorize, or acquiesce in flights over such owner's home at altitudes of 50 to 100 feet which result in special damage to him." *Chronister v. City of Atlanta,* 99 Ga. App. 447, 452-453 (108 SE2d 731) (1959). We do not believe, for the reasons discussed above, that the subsequent decision by the Supreme Court in City of Burbank on the issue of federal preemption destroys the viability of *Chronister* and other Georgia decisions predating City of Burbank as authority for the proposition that an action predicated upon a nuisance theory may be brought against the proprietor of an airport facility. "The . . . authorities recognize that a property owner has an inverse condemnation remedy, constitutionally founded, against the proprietor of an airport for *property* damage or loss caused by noise generated at the facility. We discern no reason either in law or policy why the common law and statutory remedy of nuisance. . . should not under similar circumstances equally protect the *person* of the owner or the occupant." Greater Westchester, 160 Cal. Rptr. at 738, supra. It follows, therefore, that the grant of partial summary judgment to the appellee on the theory that appellants' claims other than for inverse condemnation were barred by federal preemption must be reversed.

We would emphasize that in so holding we do not express any opinion on the merits of appellants' claim under Code Ann. § 72-101 et seq. All the trial judge held in the instant case was that, under the Supreme Court's decision in City of Burbank and other federal decisions, appellants' claims were preempted by federal regulation. All we are called upon to decide is whether that ruling was erroneous. We have held that it was and that appellants' right of action is not

barred by the doctrine of preemption. Whether appellants are entitled to recover damages under applicable Georgia law is an issue which obviously must be resolved at a later date. "If . . . the airplanes, following the traffic patterns and maintaining the altitudes prescribed by the Federal regulatory agency, have no alternative but to invade the plaintiff's property in such manner as to constitute nuisance, then this defendant, by maintaining an airport of which such invasion is an unavoidable incident, is itself maintaining the nuisance and may be held liable in damages . . . [T]he regulation promulgated by the [federal regulatory agency] as to flight altitudes 'does not determine the rights of the surface owner, either as to trespass or nuisance.' " *Chronister,* 99 Ga. App. at 452, supra.

*Judgment reversed. Quillian, C. J., and Shulman, P. J., concur.*

DECIDED FEBRUARY 4, 1981—

*Gene Burkett,* for appellants.

*J. M. Harris, Marva Jones Brooks, Irmina Rivero Owens,* for appellee.