MARILOU BRYSKI *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHI-CAGO *et al.*, Defendants-Appellees.

Second District   No. 2—85—0140

Opinion filed October 15, 1986.

Gerald M. Gorski and Thomas W. Good, both of Gorski & Fawell, Ltd., of Wheaton, and Richard J. Troy, of Sneider & Troy, of Chicago, for appellants.

James D. Montgomery, Thomas Garmisa, and Matthew J. Piers, Corporation Counsel, of Chicago, for appellee City of Chicago.

Jeremiah Marsh, Michael M. Conway, Albert C. Maule, James D. Ossyra, and Michael Schneiderman, all of Hopkins & Sutter, Mark Jones and Frank M. Grenard, both of Jones, Ware & Grenard, and Calvin P. Sawyer, of Winston & Strawn, all of Chicago, for other appellees.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Plaintiffs, residents of Du Page County, appeal from the circuit court's dismissal of their class action complaint against defendants, the city of Chicago (city) and six federally certified airlines which lease terminal facilities at O'Hare International Airport (O'Hare), in which plaintiffs seek recovery of damages arising from the operation of the airport.

The record discloses that O'Hare International Airport, which is

owned and operated by the city, is located in both Cook and Du Page counties on approximately 6,800 acres of land. O'Hare is the busiest airport in the world in terms of total enplaned and deplaned passengers and total number of aircraft flight operations, and the third largest airport in terms of cargo tonnage. In 1983 O'Hare handled 667,963 flight operations and served 42,873,953 passengers. By 1995, it is projected that the airport will be handling in excess of 1,243,000 separate flight operations, which is an 86% increase over 1983 usage levels.

Pursuant to an airport use agreement and terminal facilities lease (agreement), each defendant airline leases exclusive terminal facilities and aircraft parking areas from the city for a rental fee of $5 per square foot per year. Use of nonexclusive portions of the terminal and airfield is paid for through separate charges and landing fees. Failure to pay any of these fees or charges constitutes a default, and the city may then terminate the agreement and exclude the airline from its leased facilities or, without terminating the agreement, exclude the airline and lease the facilities to another while holding the defaulting airline liable for all fees and charges. Airlines may also sublet or assign their leased facilities.

The agreement further provides that the city has the responsibility to expend all reasonable and necessary amounts to operate and maintain all facilities of the airport aside from those areas leased for the exclusive use of the airlines. In addition the city retains control over the design and construction of all capital projects, including runways, aircraft parking areas, and terminal facilities. The city may generally make capital expenditures from preexisting funds, issue obligations for the financing of capital projects, and expend revenues obtained from the issuance of such obligations without the approval of the airlines. However, if the airlines will be obligated to pay any costs of a capital development, the agreement requires approval by airlines representing at least 50% of the total revenue gained from airline rentals, charges, and fees. The agreement also states that the city and each defendant airline have approved the airport development plan, a program of expansion designed to meet O'Hare's 1995 projected level of use.

On October 18, 1983, plaintiffs filed this class action alleging that the city's ownership and operation of O'Hare caused excessive noise, vibrations, and air pollution which deprived the plaintiffs of the use and enjoyment of their nearby property, injured the physical and mental health of plaintiffs and their children, amounted to a taking for public use of their private property, and constituted a continuing nui-

sance. Plaintiffs further alleged defendant airlines were joint venturers with the city in the development and use of O'Hare and were thereby jointly and severally liable for the damages sought. The complaint also requested an injunction ordering the city to issue obligations sufficient to satisfy any award of inverse condemnation against it as well as any other damages awarded plaintiffs.

The city moved to dismiss the complaint on the grounds that Federal law had preempted plaintiffs' claims for nuisance and trespass, the city's compliance with Federal regulations precluded any actions for nuisance and trespass, plaintiffs' allegations were insufficient to state a cause of action, the claims were barred for failure to comply with the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 1—101 *et seq.*), and plaintiffs' allegations were insufficient to obtain mandatory injunctive relief. The airlines' motion to dismiss the complaint alleged that current law precluded airline liability for inverse condemnation or tort claims and the city and airlines were not joint venturers. The circuit court dismissed plaintiffs' inverse condemnation claim without prejudice and dismissed plaintiffs' seven other counts with prejudice. Plaintiffs appeal from all but the circuit court's dismissal of the inverse-condemnation claim.

On appeal, plaintiffs contend (1) Federal law does not preempt nuisance or trespass claims against airport proprietors, (2) the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 1—101 *et seq.*) does not bar recovery from the city, (3) the airlines are joint venturers or co-proprietors with the city in the operation of O'Hare, (4) plaintiffs' complaint adequately stated a cause of action for trespass and nuisance, and (5) the circuit court erred in dismissing plaintiffs' counts requesting a mandatory injunction ordering the city to issue obligations to cover the damages sought. We consider the first issue to be dispositive and need not discuss the other issues.

Plaintiffs argue the level of Federal regulation of air commerce by the Federal Aviation Agency (FAA) is not so pervasive as to preempt their claims of nuisance and trespass against defendants. A review of pertinent United States Supreme Court decisions is necessary to the resolution of this issue.

In *United States v. Causby* (1946), 328 U.S. 256, 90 L. Ed. 1206, 66 S. Ct. 1062, the court held that when the noise of low and frequent aircraft flying immediately above an individual's property operates to directly and immediately interfere with the use and enjoyment of the land it constitutes a compensable taking under the fifth amendment

and inverse condemnation is the proper remedy for the injury. (328 U.S. 256, 266, 90 L. Ed. 1206, 1213, 66 S. Ct. 1062, 1068.) The court extended the reasoning of *Causby* in *Griggs v. County of Allegheny* (1962), 369 U.S. 84, 7 L. Ed. 2d 585, 82 S. Ct. 531, where it held that a county which owned an airport and had designed the plan for the airport, including takeoff and approach areas, was solely liable for the taking of property of nearby residents. (369 U.S. 84, 89-90, 7 L. Ed. 2d 585, 589, 82 S. Ct. 531, 534.) Although the county had fully complied with Federal guidelines, the noise, vibrations, and fear occasioned by the constant and extremely low flights over the plaintiff's property were sufficient to amount to a fifth amendment taking. The court indicated that because the county was the sole promoter, owner, lessor and designer of the airport, it would be solely responsible for the taking and neither the Federal government, which had established the guidelines, nor the airlines utilizing the airport were also responsible. 369 U.S. 84, 89, 7 L. Ed. 2d 585, 588-89, 82 S. Ct. 531, 533-34.

In the United States Supreme Court's most recent consideration of an action based upon airport noise, the owner and operator of the airport brought suit seeking a declaration that a city ordinance prohibiting jet aircraft from taking off between the hours of 11 p.m. and 7 o'clock the following morning was invalid. (*City of Burbank v. Lockheed Air Terminal, Inc.* (1973), 411 U.S. 624, 36 L. Ed. 2d 547, 93 S. Ct. 1854.) The court affirmed the circuit court's ruling that the pervasiveness of Federal regulation in the field of air commerce required a conclusion that State and local regulation in that area had been preempted and that the ordinance was therefore unconstitutional, and stated:

"Our prior cases on pre-emption are not precise guidelines in the present controversy, for each case turns on the peculiarities and special features of the federal regulatory scheme in question. Cf. *Hines v. Davidowitz* [(1941)], 312 U.S. 52 [, 85 L. Ed. 581, 61 S. Ct. 399]; *Huron Portland Cement Co. v. Detroit* [(1960)], 362 U.S. 440 [, 4 L. Ed. 2d 852, 80 S. Ct. 813]. Control of noise is of course deep-seated in the police power of the States. Yet the pervasive control vested in EPA and in FAA under the 1972 Act seems to us to leave no room for local curfews or other local controls. What the ultimate remedy may be for aircraft noise which plagues many communities and tens of thousands of people is not known. The procedures under the 1972 Act are underway. In addition, the Administrator has imposed a variety of regulations relating to takeoff and landing procedures and runway preferences. The Federal Aviation Act

requires a delicate balance between safety and efficiency, 49 U.S.C. sec. 1348(a), and the protection of persons on the ground. 49 U.S.C. sec. 1348(c). Any regulations adopted by the Administrator to control noise pollution must be consistent with the 'highest degree of safety.' 49 U.S.C. sec. 1431(d)(3). The interdependence of these factors requires a uniform and exclusive system of federal regulation if the congressional objectives underlying the Federal Aviation Act are to be fulfilled." 411 U.S. 624, 638-39, 36 L. Ed. 2d 547, 556-57, 93 S. Ct. 1854, 1862.

For purposes of this appeal, we also note footnote 14 to *Burbank*, which states:

"The letter from the Secretary of Transportation also expressed the view that 'the proposed legislation will not affect the rights of a State or local public agency, *as the proprietor of an airport*, from issuing regulations or establishing requirements as to the permissible level of noise which can be created by aircraft using the airport. Airport owners *acting as proprietors* can presently deny the use of their airports to aircraft on the basis of noise considerations so long as such exclusion is nondiscriminatory.' (Emphasis added.) This portion as well was quoted with approval in the Senate Report. *Ibid.*

Appellants and the Solicitor General submit that this indicates that a municipality with jurisdiction over an airport has the power to impose a curfew on the airport, notwithstanding federal responsibility in the area. But, we are concerned here not with an ordinance imposed by the City of Burbank as 'proprietor' of the airport, but with the exercise of police power. While the Hollywood-Burbank Airport may be the only major airport which is privately owned, many airports are owned by one municipality yet physically located in another. For example, the principal airport serving Cincinnati is located in Kentucky. Thus, authority that a municipality may have as a landlord is not necessarily congruent with its police power. We do not consider here what limits, if any, apply to a municipality as a proprietor." 411 U.S. 624, 635 n.14, 36 L. Ed. 2d 547, 555 n.14, 93 S. Ct. 1854, 1861 n.14.

Plaintiffs argue that footnote No. 14 establishes a "proprietorship exception" to the ruling in *Burbank* that Federal law has preempted State and local laws concerning airport noise and they may therefore bring this action against the city, as O'Hare's proprietor, and the airlines, as co-proprietors, for nuisance and trespass based on the noise,

vibrations, and pollution generated by O'Hare air traffic.

In support of their contention, plaintiffs cite Federal cases which hold that *Burbank* did establish a proprietorship exception. In *Illinois ex rel. Scott v. Butterfield* (N.D. Ill. 1975), 396 F. Supp. 632, 643-45, a case closely paralleling the present dispute, the district court held that a nuisance action against the city of Chicago based upon allegations that noise and pollutant emissions caused by air traffic at O'Hare and which resulted in injuries to neighboring persons and property was not barred by the preemptive effect of Federal legislation. The court relied upon footnote 14 in making its determination, as well as the fact that the nuisance action involved similar tortious behavior as the inverse-condemnation claim approved in *Griggs v. County of Allegheny* (1962), 369 U.S. 84, 7 L. Ed. 2d. 585, 82 S. Ct. 531.

In *Air Transport Association of America v. Crotti* (N.D. Cal. 1975), 389 F. Supp. 58, 64-65, the district court held that an airport proprietor could properly bar use of the facilities to airplanes exceeding monitored levels of ground noise, since the noise monitoring did not intrude upon flight operations or airspace management and therefore did not fall within the ambit of Federal preemption recognized in *Burbank*. A similar decision was reached in *British Airways Board v. Port Authority* (2d Cir. 1977), 564 F.2d 1002, 1013, which upheld the right of a proprietor to limit use of the airport to airplanes meeting certain noise standards. See also *National Aviation v. City of Hayward* (N.D. Cal. 1976), 418 F. Supp. 417, 424-25.

Plaintiffs also point out that two State courts considering the question have upheld nuisance actions against proprietors of municipal airports based upon the excessive noise generated by aircraft utilizing the airports' facilities. (*Greater Weschester Homeowners Association v. City of Los Angeles* (1979), 26 Cal. 3d 86, 100, 603 P.2d 1329, 1336, 160 Cal. Rptr. 733, 739, *cert. denied* (1980), 446 U.S. 933, 64 L. Ed. 2d 786, 100 S. Ct. 2149; *Owen v. City of Atlanta* (1981), 157 Ga. App. 354, 356-57, 277 S.E.2d 338, 340-41, *aff'd* (1981), 248 Ga. 299, 282 S.E.2d 906, *cert. denied* (1982), 456 U.S. 972, 72 L. Ed. 2d 846, 102 S. Ct. 2235.) The reasoning in both these cases is premised upon *Burbank's* footnote 14 "proprietorship exception." As the court in *City of Atlanta v. Owen* stated:

"As we interpret City of Burbank, that decision merely stands for the proposition that a non-proprietor municipality, acting under its *police power*, may not regulate the timing of aircraft landings. A non-proprietor may not exercise its police power in contravention of federal regulation in the same area. City of

Burbank does not, however, stand for the proposition that federal regulation has ousted a proprietor from the exercise of *all* proprietary control over its own facility. As have several other courts, we construe footnote 14 of the City of Burbank decision as recognizing that the proprietor has the power to impose airport use restrictions where such restrictions are reasonable and nondiscriminatory. [Citations.] *** The proprietor of an airport must bear its rightful share of the legal liability for all the damage and loss resulting from and occasioned by its facility." (Emphasis in original.) *Owen v. City of Atlanta* (1981), 157 Ga. App. 354, 356, 277 S.E.2d 338, 340.

In response, defendants cite cases holding that neighboring landowners may not bring nuisance actions against municipal airport proprietors. In a case decided one month after *Illinois ex rel. Scott v. Butterfield* (N.D. Ill. 1975), 396 F. Supp. 632, the United States Court of Appeals for the Seventh Circuit in *Luedtke v. County of Milwaukee* (7th Cir. 1975), 521 F.2d 387, dismissed State claims of nuisance and negligence against the proprietor of a county owned airport and five federally certified airlines which utilized the airport facilities, stating:

"Since the federal laws and regulations have preempted local control of aircraft flights, *Burbank, supra,* the defendants may not, to the extent they comply with such federal laws and regulations, be charged with negligence or creating a nuisance" (521 F.2d 387, 391),

and that inverse condemnation was the proper remedy for the plaintiffs' grievances.

Similar rulings have resulted from State courts' consideration of such claims. In holding that plaintiffs' only remedy lay in an action for inverse condemnation, the court in *Drybread v. City of St. Louis* (Mo. App. 1982), 634 S.W.2d 519, stated:

"Plaintiffs contend that they have stated causes of action for damages in trespass and nuisance. Little need be said concerning the trespass contention. In *United States v. Causby* 328 U.S. 256, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946) 1. c. 261, the Court held that the air is a public highway. The air above the land does not belong to the landowner to the extent it is 'navigable airspace.' That phrase means 'airspace above the minimum altitudes of flight prescribed by regulations issued under this chapter, and shall include airspace needed to insure safety in take-off and landing of aircraft.' 49 U.S.C. sec. 1301(29) (Supp. III. 1979). There is no allegation that the airspace utilized for the aviation complained of by plaintiffs was not navi-

gable airspace and therefore no allegation the airspace belonged to plaintiffs. In fact, the allegations reflect it was navigable airspace. There is no trespass on plaintiffs' property from utilization of this airspace.

The nuisance contention is equally without merit." 634 S.W.2d 519, 520.

Courts in other States have also concluded that inverse condemnation is the sole remedy for a landowner harmed by aircraft overflights involving an airport owned and operated by a city or county. (See *Ario v. Metropolitan Airports Com.* (Minn. 1985), 367 N.W.2d 509, 516; *Long v. City of Charlotte* (N.C. 1982), 293 S.E.2d 101, 108; *Highline School District No. 401 v. Port of Seattle* (1976), 87 Wash. 2d 6, 17-18, 548 P.2d 1085, 1092-93.) However, these cases did not discuss any ramifications of footnote 14 in *City of Burbank v. Lockheed Air Terminal, Inc.* (1973), 411 U.S. 624, 635, 36 L. Ed. 2d 547, 555, 93 S. Ct. 1854, 1860-61, and therefore offer little aid to our present inquiry.

Although the Illinois courts have never squarely addressed this issue, the appellate court in *Village of Bensenville v. City of Chicago* (1973), 16 Ill. App. 3d 733, 306 N.E.2d 562, did rely on the reasoning in *Burbank* to deny a request by landowners to enjoin an expansion of O'Hare's facilities. The court considered that *Burbank* compelled a conclusion that Federal laws had "so occupied the regulation of aircraft noise and air pollution as to pre-empt any state or local action in that field" (16 Ill. App. 3d 733, 738, 306 N.E.2d 562), and that the plaintiffs could still bring a proper action at law against the city on the theory of inverse condemnation. Also, in *County of Cook v. Priester* (1974), 22 Ill. App. 3d 964, 970, 318 N.E.2d 327, *aff'd* (1976), 62 Ill. 2d 357, 342 N.E.2d 41, the appellate court held that a county ordinance restricting the use of a private airfield to airplanes not exceeding 60,000 pounds was invalid under *Burbank*.

Defendants argue the court's statement in *Bensenville* that plaintiffs could still pursue inverse-condemnation relief is in effect a finding that inverse condemnation is the sole remedy available to landowners for the recovery of damages as premised upon inflight noise and pollution from O'Hare's operation. We agree with defendants that plaintiffs are barred by *Burbank* from pursuing nuisance and trespass claims against defendant airport proprietors.

A careful reading of footnote 14 in *Burbank* reveals the views expressed in that footnote are not those of the court, but the comments of the Secretary of Transportation at that time. The court did not criticize those views, but was equally careful to refrain from approving them, stating:

"Thus, authority that a municipality may have as a landlord is not necessarily congruent with its police power. We do not consider here what limits, if any, apply to a municipality as a proprietor." (*City of Burbank v. Lockheed Air Terminal, Inc.* (1973), 411 U.S. 624, 635 n.14, 36 L. Ed. 2d 547, 555 n.14, 93 S. Ct. 1854, 1861 n.14.) Despite plaintiffs' arguments to the contrary, this statement is not a positive recognition of a "proprietorship exception," but merely an expression of the court's refusal to consider the issue at that time.

■■ We disagree with those cases from other jurisdictions which hold that airport proprietors may be held liable for nuisance and trespass and adopt the reasoning of the United States Court of Appeals for the Seventh Circuit, as expressed in *Luedtke v. County of Milwaukee* (7th Cir. 1975), 521 F.2d 387, which stated that the proprietor of a county-owned airport and federally certified airlines operating out of that airport could not be charged with negligence or creating a nuisance to the extent they conformed with Federal laws and regulations. This holding fully incorporates the Supreme Court's ruling in *Burbank* that airspace management has been federally preempted. Moreover, it is in accord with the court's earlier decisions in *United States v. Causby* (1946), 328 U.S. 256, 266-67, 90 L. Ed. 1206, 1213, 66 S. Ct. 1062, 1068, and *Griggs v. County of Allegheny* (1962), 369 U.S. 84, 88-90, 7 L. Ed. 2d 585, 588-89, 82 S. Ct. 531, 534, that the proper remedy for damages caused by the operation of a nearby airport is an action for inverse condemnation.

We find support for our conclusion in *County of Cook v. Priester* (1974), 22 Ill. App. 3d 964, 318 N.E.2d 327, *aff'd* (1976), 62 Ill. 2d 357, 342 N.E.2d 41, and *Village of Bensenville v. City of Chicago* (1973), 16 Ill. App. 3d 733, 306 N.E.2d 562, in which the courts noted the pervasive nature of Federal regulation over air commerce and, in the latter case, noted that plaintiffs could still bring an inverse-condemnation claim. (But see *Wright v. County of Winnebago* (1979), 73 Ill. App. 3d 337, 343-44, 391 N.E.2d 772.) Plaintiffs' current actions are based solely on the inflight operation of aircraft arriving at and departing from O'Hare in full compliance with Federal regulations. Plaintiffs do not predicate their complaint on ground noise or pollution and do not allege in their complaint that the defendant city or airlines have violated Federal regulations in the operation of the airport.

As plaintiffs' claims in nuisance and trespass are based completely upon the inflight operation of aircraft, they necessarily interfere with the Federal regulation of airspace management and are preempted by

Federal law under *Burbank*. We hold the circuit court correctly dismissed plaintiffs' complaint against the city, as O'Hare's proprietor, and the airlines, as co-proprietors, for nuisance and trespass based upon the noise, vibrations, and pollution generated by O'Hare air traffic.

■ Plaintiffs' further argument that section 12 of the Illinois Constitution of 1970 requires a remedy for every wrong is without merit. That provision states:

> "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly." Ill. Const. 1970, art. I, sec. 12.

Courts construing this provision have held that the section expresses a philosophy and does not impose a mandate that the court must create a remedy where one did not formerly exist. (*Favata v. Rosenberg* (1982), 106 Ill. App. 3d 572, 574, 436 N.E.2d 49; *Berlin v. Nathan* (1978), 64 Ill. App. 3d 940, 950, 381 N.E.2d 1367, *cert. denied* (1979), 444 U.S. 828, 62 L. Ed. 2d 36, 100 S. Ct. 53.) In any event, plaintiffs may still pursue a claim of inverse condemnation and are not denied a remedy for any damage to their property.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOPF and SCHNAKE, JJ., concur.