Lawrence BIENEMAN, on his own be-
half and on behalf of all persons
similarly situated, Plaintiffs,

v.

The CITY OF CHICAGO, et
al., Defendants.

Delbert BIDDISON, on his own behalf
and on behalf of all persons similarly
situated, Plaintiffs,

v.

The CITY OF CHICAGO, et
al., Defendants.

Nos. 84 C 10388, 85 C 10295.

United States District Court,
N.D. Illinois, E.D.

June 8, 1987.

Joseph V. Karaganis, Karaganis & White
Ltd., A. Bruce White, Kathleen M. Dona-
hue, Ellen Lois Zisook, Bell, Boyd & Lloyd,
Chicago, Ill., for plaintiffs.

Jeremiah Marsh, Michael Schneiderman,
Michael M. Conway, Albert C. Maule, Wil-
liam J. McKenna, Jr., James D. Ossyra,
Hopkins & Sutter, Edward L. Foote, Calvin
P. Sawyier, Edward J. Wendrow, Cristofer
E. Lord, Winston & Strawn, Judson H.
Miner, Corporation Counsel, Thomas Gar-
misa, Matthew J. Piers, Assistant Corpora-
tion Counsels, Mark E. Jones, Mitchell
Ware, Frank M. Grenard, Martin P.
Greene, Jones, Ware & Grenard, Chicago,
Ill., for defendants.

**MEMORANDUM OPINION**

BRIAN BARNETT DUFF, District Judge.

Lawrence Bieneman and Delbert Biddison own homes near O'Hare International Airport and claim various injuries from the noise, vibrations, and air pollution that O'Hare inflicts on its neighbors. Each has sued the City of Chicago—which owns and operates O'Hare—and several airlines, seeking relief both on his own behalf and on behalf of "all persons who own, use or reside in residential real property situated in Illinois within the territorial boundaries of Cook County and DuPage County, under or adjacent to the paths of aircraft approaching, departing or circling O'Hare International Airport." *Bieneman v. City of Chicago*, No. 84 C 10388; *Biddison v. City of Chicago*, No. 85 C 10295. The two cases have been found related, and come before the court today on defendants' motions to dismiss.[1]

Bieneman's and Biddison's eight-count First Amended Complaints are nearly identical, and name as defendants the City, Harold Washington in his official capacity as Mayor of the City of Chicago, Jerome Butler in his official capacity as acting Commissioner of the Department of Aviation of the City of Chicago (collectively, "the City defendants"), and seven companies providing air passenger service at O'Hare: American Airlines, Inc.; Delta Airlines, Inc.; Northwest Airlines, Inc.; Ozark Airlines, Inc.; Trans World Airlines, Inc.; United Air Lines, Inc.; and USAirlines, Inc. (collectively, "the airline defendants").

Count I of each First Amended Complaint accuses the City defendants of maintaining an official policy that has deprived plaintiffs of their Fourteenth Amendment rights to life, liberty, and property in violation of 42 U.S.C. § 1983. Count II accuses the airline defendants of acting under color of state law as co-conspirators with the City to deprive plaintiffs of their Fourteenth Amendment rights in violation of § 1983. Count III is an inverse condemnation claim against the City.

Count IV alleges that the City's operation of O'Hare constitutes a continuing nuisance. Count V is a claim against the City for assault and battery. Count VI alleges that the airline defendants are joint venturers with the City in the operation of O'Hare and therefore are liable together with the City for the injuries alleged in Counts III–V. Count VII seeks a declaratory judgment that federal law does not preempt plaintiffs' state law tort claims against the City. Finally, Count VIII alleges that the City violated plaintiffs' Fourteenth Amendment rights by taking their property without due process.

The City defendants have moved to dismiss Counts I, III, IV, V, VII, and VIII in *Bieneman*, and Counts I, IV, V, VII, and VIII in *Biddison*. In *Biddison* the City defendants have also filed a motion for summary judgment on Count III, but the court has suspended briefing on that motion pending additional discovery. The airline defendants have moved to dismiss Count VI in both *Bieneman* and *Biddison*. Because the parties have consolidated briefing in the *Bieneman* and *Biddison* cases, the court now has before it a single set of briefs addressing the merits of Counts I, III, IV, V, VII, and VIII of the First Amended Complaints, and a single set of briefs addressing the merits of Count VI of those complaints. The court examines each count in turn.

---

1. Rule 23(c)(1) of the Federal Rules of Civil Procedure provides that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Although the Seventh Circuit has emphasized the importance of compliance with this requirement, *see, e.g., Glidden v. Chromalloy American Corp.*, 808 F.2d 621 (7th Cir.1986), no party in either *Beineman* or *Biddison* has sought a determination of whether it is appropriate to maintain these cases as class actions. It appears likely from the face of the complaints that class action status is appropriate, but the court declines to make such a determination without the participation of counsel. Presumably some party will raise the issue in the near future. Since the status of these cases as class actions is irrelevant to the motions before the court today, the court proceeds to address the merits of those motions.

## Counts I and II

■ Counts I and II of the First Amended Complaints restate claims that Judge Decker dismissed from Bieneman's original complaint on October 23, 1985. This court declined to reconsider Judge Decker's order and made it applicable to the *Biddison* case. Plaintiffs say they have repleaded Counts I and II in order to preserve their right to appeal Judge Decker's dismissal of those counts. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir.1981) (plaintiff waives all claims alleged in the original complaint which are not reasserted in the amended complaint); *contra Wilson v. First Houston Investment Corp.*, 566 F.2d 1235, 1238 (5th Cir.1978) (plaintiff who filed amended complaint after dismissal may raise on appeal the correctness of the dismissal order). It is not for this court to decide whether plaintiffs who file amended complaints must replead dismissed claims in order to preserve those claims for appeal; in this case plaintiffs have chosen to replead the dismissed claims, and Judge Decker's ruling remains the law of the case. Counts I and II are dismissed.

## Count III

Count III of Bieneman's complaint alleges that "in 1976 Defendant City of Chicago destroyed the use and enjoyment of Plaintiffs' properties, damaged and destroyed Plaintiffs' airspace, dwellings, and other structures on Plaintiffs' properties, and totally destroyed the value of Plaintiffs' property as residences." By virtue of this conduct, Bieneman continues, "Plaintiffs' properties and airspace, and each of them, have been confiscated, condemned, taken and made useless by Defendant City of Chicago without due process and without compensation in violation of the Fourteenth Amendment to the Constitution of the United States." The City moves to dismiss Count III on the ground that it fails to state a claim under the Fourteenth Amendment, and in any event is barred by the statute of limitations.

Unlike Bieneman's other federal claims—Counts I and II, which allege violations of § 1983—Count III alleges only a violation of the Fourteenth Amendment. There is strong authority that the Fourteenth Amendment does not support a direct cause of action against a municipality when the municipality is subject to suit under § 1983.

The Supreme Court did imply a cause of action arising directly under the Constitution in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), where the Court held that victims of constitutional violations by federal agents may sue the agents despite the absence of a statutory cause of action. But the Court subsequently held that such a cause of action is not available when "Congress has provided an alternative remedy which is explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Carlson v. Green*, 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980) (emphasis in original). Lower courts subsequently have expressed considerable reluctance to expand the number of direct actions allowed under the Constitution absent explicit Supreme Court approval, reading *Carlson* to limit the availability of such causes of action to circumstances where no alternative statutory remedy exists. *See, e.g., Morris v. Washington Metropolitan Area Transit Authority*, 702 F.2d 1037, 1042 n. 10 (D.C.Cir. 1983).

■ Since the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), it has been clear that § 1983 provides a cause of action against municipalities and municipal employees acting in their official capacities, and courts accordingly have declined to allow direct constitutional claims against local governments. As one court in this district has concluded, "Congress intended § 1983 to be the exclusive federal remedy for the unconstitutional actions of city officials." *Strauss v. City of Chicago*, 614 F.Supp. 9, 10 (N.D.Ill. 1984), *aff'd* 760 F.2d 765 (7th Cir.1985). *Accord Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir.1982); *Ward v. Caulk*, 650 F.2d 1144, 1147–48 (9th Cir.1981). In-

deed, the D.C. Circuit noted in *Morris* that since the Supreme Court's *Monell* decision every court of appeals to address the issue has concluded that no direct cause of action exists under the Fourteenth Amendment against nonfederal defendants. 702 F.2d at 1042 n. 10. In view of the many decisions rejecting direct causes of action under the Constitution when statutory remedies are available, and in view of the fact that the Supreme Court has recognized a cause of action against a municipality under § 1983 for inverse condemnation, *Lake Country Estates v. Tahoe Planning Agency*, 440 U.S. 391, 399–400, 99 S.Ct. 1171, 1176, 59 L.Ed.2d 401 (1979), this court concludes that Bieneman does not have a direct cause of action against the City under the Fourteenth Amendment.

Only one recent case provides contrary authority, holding in a footnote that "[b]ecause an alleged 'taking' in violation of the fifth and fourteenth amendments presents a serious constitutional question, a direct cause of action lies within the district court's federal question jurisdiction." *Amen v. City of Dearborn*, 718 F.2d 789, 792 n. 4 (6th Cir.1983). But *Amen* cites as its only authority two pre-*Monell* cases, *Gordon v. City of Warren*, 579 F.2d 386, 391 (6th Cir.1978), and *Muskegon Theaters, Inc. v. City of Muskegon*, 507 F.2d 199, 200 (6th Cir.1974), which allowed direct Fourteenth Amendment inverse condemnation actions against municipalities on the ground that no remedy was available under § 1983. In light of *Monell* and *Lake Country Estates,* such reasoning is no longer valid.

■ Bieneman cannot save Count III by amending it to allege a violation of his rights under § 1983. "[I]n Illinois, a plaintiff whose section 1983 cause of action accrued before the [Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)], must file suit within the shorter period of either five years from the date his action accrued or two years after *Wilson.*" *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986). Because Bieneman's cause of action under § 1983 arose in 1976, more than five years

before he brought this suit, the statute of limitations bars his claim. Count III of Bieneman's complaint is dismissed.

### Counts IV and V

■ The City raises two arguments against Counts IV and V, which allege the torts of nuisance and assault and battery: first, that federal law preempts state tort claims against airport proprietors; and second, that Illinois courts have not recognized a cause of action against the proprietor of a transportation facility for the lawful, non-negligent operation of that facility.

As the City points out, *Luedtke v. County of Milwaukee*, 521 F.2d 387 (7th Cir. 1975) is a formidable obstacle to plaintiffs' tort claims. In *Luedtke* the Seventh Circuit held that federal law preempts state negligence and nuisance actions against airport proprietors and airlines so long as the airports and airlines are operating consistently with federal laws and regulations. 521 F.2d at 391. *Accord, Bryski v. City of Chicago*, 148 Ill.App.3d 556, 564, 101 Ill. Dec. 795, 499 N.E.2d 162 (2nd Dist.1986).

Plaintiffs acknowledge *Luedtke*, but argue that it is no longer good law in light of the Supreme Court's decision in *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). *Silkwood* holds that federal regulation of the safety aspects of nuclear energy does not preempt a state law action for punitive damages for the release of plutonium from a federally licensed facility. 464 U.S. at 258, 104 S.Ct. at 626. The Court based its conclusion on extensive evidence that Congress intended to retain state tort remedies for nuclear injuries when it enacted laws regulating nuclear safety, and on its determination that the existence of state remedies would neither frustrate the objectives of federal law nor create an irreconcilable conflict between state and federal standards. *Id.* at 256, 104 S.Ct. at 625.

Nothing in *Silkwood* suggests that the Seventh Circuit erred in *Luedtke* when it held that federal regulation of air transportation preempts state tort actions against airport proprietors and airlines complying with federal law. Neither *Luedtke* nor the

Supreme Court decision on which *Luedtke* relied, *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973) (pervasive nature of scheme of federal regulation of aircraft noise preempts local ordinance limiting hours of takeoffs by jet aircraft), finds any evidence of Congressional intent to allow state regulation of airport operations. Indeed, *City of Burbank* recites substantial evidence that Congress did intend to preempt local regulation of airport noise. 411 U.S. at 633–39, 93 S.Ct. at 1859–62. *Silkwood*'s conclusion that federal law does not preempt state tort actions in the area of nuclear safety does nothing to undermine *Luedtke*'s conclusion that federal law preempts such claims in the unique and entirely unrelated field of air transportation.

Because *Luedtke* remains good law in the Seventh Circuit, this court must follow it. Counts IV and V are dismissed because they assert state tort claims preempted by federal law. It is unnecessary to address the City's alternative argument for the dismissal of Counts IV and V.

### Count VI

Count VI alleges that the airline defendants are joint venturers with the City in the operation of O'Hare, and thus are liable together with the City for the inverse condemnation alleged in Count III, and for the common law torts alleged in Counts IV and V.

■ As the court has already concluded, federal law preempts plaintiffs' state tort claims. *Luedtke v. County of Milwaukee*, 521 F.2d at 391. *Luedtke* and *Griggs v. Allegheny County*, 369 U.S. 84, 89, 82 S.Ct. 531, 534, 7 L.Ed.2d 585 (1962) foreclose plaintiffs' inverse condemnation claim against the airlines; both cases squarely hold that airlines may not be held liable for the taking of property adjacent to airports from which the airlines operate flights. Count VI is dismissed.

### Count VII

In Count VII plaintiffs request a declaratory judgment that federal law does not preempt their state tort claims against the City. Count VII is superfluous and an inappropriate invocation of the district court's power to grant declaratory relief. If plaintiffs' state tort claims survive a motion to dismiss there is no need for a declaration that federal law does not preempt them; on the other hand, if the court dismisses the state tort claims on the basis of preemption a request for a declaratory judgment of non-preemption can fare no better. Count VII is dismissed for the same reasons as Counts IV and V.

### Count VIII

■ Count VIII alleges that the City violated plaintiffs' Fourteenth Amendment right to due process by acquiring interests in their property without notice or a hearing. This adds nothing to the allegations of Count III. Assuming plaintiffs can show that the City did actually "take" their property, it is settled law that a governmental body may take land without notice or a hearing, leaving the landowner with an action for inverse condemnation as his sole remedy. *United States v. Clarke*, 445 U.S. 253, 256–57 and n. 3, 100 S.Ct. 1127, 1129–30, and n. 3, 63 L.Ed.2d 373 (1980); *Barbian v. Panagis*, 694 F.2d 476, 482 n. 6 (7th Cir.1982). Count III asserts such a claim, so Count VIII is redundant. Count VIII is dismissed.

### CONCLUSION

Counts I, II, IV, V, VI, VII, and VIII of *Bieneman v. City of Chicago*, No. 84 C 10388, and *Biddison v. City of Chicago*, No. 85 C 10295, are dismissed. Count III of *Bieneman* also is dismissed.